******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IKEEM WASHINGTON *v.* COMMISSIONER
OF CORRECTION
(AC 37420)

Lavine, Alvord and Sheldon, Js.

*Argued April 13—officially released June 21, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*John C. Drapp III*, assigned counsel, with whom, on
the brief, was *James R. Fraguela*, assigned counsel, for
the appellant (petitioner).

*Timothy F. Costello*, assistant state's attorney, with
whom, on the brief, were *Michael Dearington*, state's
attorney, and *Adrienne Maciulewski*, deputy assistant
state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Ikeem Washington, appeals following the habeas court's denial of his petition for certification to appeal from the denial of his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion by denying his petition for certification to appeal and (2) erred in concluding that he failed to demonstrate that his trial counsel's performance was deficient and that he was not prejudiced by the representation of his trial counsel. We dismiss the appeal.

In his amended petition for a writ of habeas corpus, the petitioner alleged, in relevant part, that Attorneys David Egan and Richard Marquette provided him with ineffective assistance of trial counsel in that they failed to advise him of the legal and liberty ramifications of accepting or rejecting a certain plea offer from the state under General Statutes § 18-98 and our Supreme Court's holdings in *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 860 A.2d 715 (2004), *Cox* v. *Commissioner of Correction*, 271 Conn. 844, 860 A.2d 708 (2004), and *Hunter* v. *Commissioner of Correction*, 271 Conn. 856, 860 A.2d 700 (2004) (*Harris, Hunter, Cox* trilogy), which control the application of presentence confinement credit.[1] As a result of counsel's alleged deficient representation, the petitioner claimed that he received only forty-four days of presentence confinement credit on the sentence imposed on him in the judicial district of New Haven in May, 2012, rather than 279 days of presentence confinement credit.[2] Following a trial on November 6, 2014,[3] the habeas court, *Fuger, J.*, found that Marquette's representation of the petitioner was not deficient and that the reason the petitioner lost 279 days of presentence confinement credit was his unconditional rejection of the state's initial plea offer.

The record discloses the following facts and procedural history. On December 21, 2010, the petitioner was released from incarceration and began the probationary period of the four concurrent sentences he was serving.[4] One of those sentences had been imposed in the judicial district of Ansonia-Milford and the other three had been imposed in the judicial district of New Haven. On April 19, 2011, while he was on probation, the petitioner attempted to rob a Q-Mart convenience store in Wallingford. The store clerk not only foiled the petitioner's robbery attempt, but also provided the police with information about the vehicle in which the petitioner left the scene. A state trooper observed the vehicle on Interstate 91 and followed it into New Haven, where the trooper initiated a traffic stop that eventually led to the petitioner's arrest.

As a result of the attempted robbery, the petitioner was charged with crimes in both the judicial district of New Haven and the judicial district of Ansonia-Milford.

The charges related to the attempted robbery were filed in New Haven,[5] along with three charges of violation of probation (New Haven charges). The petitioner appeared in court in New Haven on April 20, 2011, at which time Attorney Cheryl Heffernan was appointed to represent him. The petitioner was unable to post bond and, therefore, was held in pretrial detention from April 20, 2011, until June 2, 2011, for a total of forty-four days.

On June 3, 2011, also as a result of the attempted robbery, the petitioner was arrested and charged with violation of probation of the prior Milford sentence (violation of probation). Egan was appointed to represent the petitioner on that charge. The petitioner again was unable to post bond and was confined from that date until he was sentenced for violation of probation on March 8, 2012, for a total of 279 days. Thus, the petitioner was being held in pretrial detention simultaneously on the New Haven charges and the violation of probation charge.

On December 1, 2011, the petitioner appeared with Heffernan in New Haven. The petitioner rejected a "global" settlement plea agreement offered by the state,[6] which would have resolved the Wallingford attempted robbery charges and the three violation of probation charges pending against him in New Haven. The court, *Fasano, J.*, was aware of the Milford violation of probation charge and stated that once "the matter is assigned to a trial prosecutor in Milford, they can work out in Milford which would go first." Judge Fasano continued the New Haven charges until December 20, 2011. Heffernan then informed Judge Fasano that the petitioner was dissatisfied with her representation and had filed a motion to remove her as his counsel, as well as a grievance against her. At the petitioner's request, Judge Fasano appointed Marquette to represent him in Heffernan's stead.[7]

The petitioner appeared with Egan in Milford on January 30, 2012. The state made a plea offer of seven years to resolve the violation of probation charge. The petitioner initially rejected the offer,[8] but following a discussion with the court, *Arnold, J.*, and Egan, the petitioner decided to accept the plea offer. Before Judge Arnold accepted the petitioner's guilty plea, the court explained that it would stay the imposition of sentencing until the petitioner was able to resolve the New Haven charges so that the petitioner could serve his sentences concurrently.[9] The petitioner informed Judge Arnold that he had new counsel in New Haven and that the case could go on for another three months. Judge Arnold stated that he would not schedule sentencing before the petitioner's next court date in New Haven in order to give the petitioner an opportunity to negotiate a settlement. The petitioner was next to appear in New Haven on March 2, 2012. Judge Arnold, therefore, stayed sentenc-

ing of the violation of probation charge until March 8, 2012. In doing so, the court stated to the petitioner: "So understand, sir, that if you're able to work out something in New Haven on or before the date, I am going to continue this to, which is March eighth . . . if on March eighth we find out you have worked out an agreement in New Haven, but the sentencing in New Haven would be at a later date, then I will continue to continue this case so that both sentences would go into effect on the same date so that they would run concurrent, understand?" The petitioner stated: "Understand."

The court further stated: "Now, if I accept your admission today, you understand you can't change your mind at a later date, all right. I told you I will go along with what I can to get a resolution of your New Haven case. But if you don't make a resolution of the New Haven case, then this sentence will go into effect certainly March eighth . . . . But if you have an agreement in the New Haven case, I will wait until that agreement is being sentenced so this can run concurrent. Do you understand that?" The petitioner stated: "Yes."

After Judge Arnold accepted the petitioner's guilty plea, he stated to the petitioner: "So once again, Mr. Washington, I am going to sentence you now, but I am going to stay that sentencing, meaning it is not going to go into effect. The earliest date that it will go into effect is March eighth, if there is no agreement, and we know it. It can get continued from March eighth, number one, if you have an agreement in New Haven and then we'll find out when New Haven is going to sentence you . . . . [B]ut if I have been told on March eighth that there is no agreement, it's been turned down, and it's a dead deal in New Haven, this sentence will go into effect on March eighth, okay?"[10]

On March 2, 2012, the petitioner appeared in New Haven where he rejected the state's plea offer. Judge Fasano assigned the petitioner's case to the trial list.

When the petitioner returned to court in Milford on March 8, 2012, Egan asked Judge Arnold for a further continuance of the imposition of the petitioner's sentence. Judge Arnold declined the request. The petitioner protested that Marquette had only been on the case for a few months and that he needed more time to work out a plea agreement of "ten [years] suspended after seven . . . ." Judge Arnold noted that was much more favorable than the offer the state made in December, 2011, an offer of twenty years in prison suspended after twelve. Egan protested the court's refusal to continue sentencing, noting that the petitioner's presentence confinement time would be credited to the Milford sentence, not the New Haven sentence. Judge Arnold stated that the petitioner would have to make a request to have the presentence time apply in New Haven. The court then lifted the sentencing stay.

Thereafter jury selection began on the New Haven charges. On April 19, 2012, the petitioner appeared before Judge Fasano. At that time, the state withdrew its plea offer of twenty years to serve, suspended after twelve years. The petitioner's case was scheduled to begin trial on May 1, 2012. On April 30, 2012, the petitioner appeared in court to accept a new plea offer calling for fourteen years of incarceration to be served concurrent to the sentence imposed in Milford. During his plea canvass, the petitioner stated that the New Haven sentence would be served concurrent with the Milford sentence and that he would receive presentence confinement credit on his New Haven sentence. The court, *Clifford, J.*, stated that there was no agreement as to the allocation of presentence confinement credit. Marquette asked if the state would entertain an agreement as to the presentence confinement credit. The state rejected the request. Judge Clifford stated that that the allocation of presentence confinement credit was a matter for the Department of Correction (department) to determine. The petitioner, however, accepted the state's new plea offer and the court accepted his guilty plea pursuant to *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). As previously noted, the petitioner was sentenced to fourteen years of incarceration on May 25, 2012.

The department applied forty-four days of presentence confinement credit to the petitioner's New Haven sentence, which accounted for the time the petitioner had spent in confinement between the date of his April 19, 2011 arrest and June 2, 2011, when he was arrested in Milford for violation of probation. The department allocated 279 days of presentence confinement credit for the period between June 2, 2011, and March 8, 2012, to the petitioner's sentence for violation of probation.

Following the habeas trial, Judge Fuger found that both Egan and Marquette were aware of and considered the application of the *Harris, Hunter, Cox* trilogy. The evidence was clear that the petitioner unconditionally had been rejecting any possibility of a plea in New Haven. Judge Fuger also found that Judge Arnold "apparently lost patience with the length of time" it was taking to resolve the charges against the petitioner. He found that, if the petitioner did not accept the plea offer of seven years on the violation of probation charges, Judge Arnold would soon call the case for a hearing, which could have resulted in a sentence of more than seven years and the loss of 279 days of presentence confinement credit. Judge Fuger found that it was the petitioner's reluctance to plead guilty in New Haven, which was his right, that resulted in the loss of presentence confinement credit to his May 25, 2012 sentence on the New Haven charges. The petitioner could have taken the case to trial, but he ultimately elected to take a plea. Judge Fuger found that it was the petitioner's fault that he lost the 279 days of

presentence confinement credit, not Marquette's.

The habeas court found no deficient performance by Marquette. If Marquette was operating under any time constraint, it was precipitated by the petitioner who chose to release Heffernan fairly late in the pretrial process. The court therefore denied the amended petition for a writ of habeas corpus and the petitioner's request for certification to appeal.

"Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). To prove an abuse of discretion, the petitioner must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . Id., 616, quoting *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. Id., 612. We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. . . . *J.R.* v. *Commissioner of Correction*, 105 Conn. App. 827, 831, 941 A.2d 348, cert. denied, 286 Conn. 915, 945 A.2d 976 (2008). A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." (Internal quotation marks omitted.) *Elliston* v. *Commissioner of Correction*, 131 Conn. App. 787, 788–89, 28 A.3d 1019 (2011).

"A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . Put another way, the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Atkinson* v. *Commissioner of Correction*, 125 Conn. App. 632, 638, 9 A.3d 407 (2010), cert. denied, 300 Conn. 919, 14 A.3d 1006 (2011).

In *Hill* v. *Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the United States Supreme Court "established that claims of ineffective assistance of

counsel in the plea bargaining context are governed by the two part test set forth in *Strickland* [v. *Washington*, supra, 466 U.S. 668.]" *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 478, 68 A.3d 624 (2013). "[A] criminal defendant has a sixth amendment right to effective assistance of counsel during plea negotiations, including when he or she rejects a plea bargain as a result of poor legal advice." Id., 476, citing *Missouri* v. *Frye*,    U.S.   , 132 S. Ct. 1399, 1405, 182 L. Ed. 2d 379 (2012), and *Lafler* v. *Cooper*,    U.S.   , 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012).

Despite the procedural complexity of the present appeal, the resolution of the petitioner's claim turns on a credibility determination. In his amended petition for a writ of habeas corpus, the petitioner alleged that Marquette failed to explain meaningfully how § 18-98 and the *Harris*, *Hunter*, *Cox* trilogy affected the calculation and application of presentence confinement credit. At the habeas trial, Marquette testified that he had explained to the petitioner that he would not receive pretrial confinement credit for the New Haven charges if he did not conclude the New Haven charges quickly, but despite that explanation, the petitioner did not want to accept the state's initial plea offer. The petitioner's claim quite simply turns on the court's credibility determination.

In his oral decision, Judge Fuger implicitly credited Marquette's testimony over that of the petitioner.[11] The court found that Marquette was "aware of and considered the application of . . . *Harris*, *Hunter* and *Cox*. It is clear that the petitioner . . . had—been unconditionally rejecting any possibility of a plea."

We carefully have reviewed the record before the habeas court, including the transcripts of the proceedings in Milford and New Haven, and the transcript of the habeas trial. The evidence supports the habeas court's finding. Egan's testimony supports Marquette's testimony that the two lawyers were trying to work in concert for the benefit of the petitioner. Egan testified that he had sent a letter to the petitioner explaining to him why it was necessary for him to resolve the New Haven charges.[12] At the time he accepted the petitioner's guilty plea, Judge Arnold several times told the petitioner that the New Haven and Milford cases had to be resolved together to preserve his presentence confinement credit. The petitioner stated to Judge Arnold that he understood the need to resolve the New Haven charges. See footnote 10 of this opinion. We note that the petitioner appears to be quite experienced in the workings of the criminal justice system and knowledgeable about the intricacies of the law of sentencing. Moreover, the record discloses that the petitioner was not satisfied with the state's original plea offer on the New Haven charges and represented that he hoped to secure a plea offer of "ten [years] suspended after seven . . . ."

We therefore conclude that the habeas court did not abuse its discretion by denying the petitioner's petition for certification to appeal. The issue of credibility is not debatable among jurists of reason, no court could have resolved the issues in a different manner, and the issue does not deserve encouragement to proceed further. In simple English, the petitioner's own actions, not those of his lawyers, were the cause of any problems he experienced.

The appeal is dismissed.

[1] In *Hunter* v. *Commissioner of Correction*, supra, 271 Conn. 865, our Supreme Court held with respect to the proper construction of § 18-98d that "after the [Commissioner of Correction] credits days served in presentence confinement to the first of two concurrent sentences, the days encompassed therein [have] been counted . . . once for the purpose of reducing all sentences imposed within the meaning of § 18-98d (a) (1) (A). As a consequence, they [cannot] be applied again to advance the . . . discharge date for the [second] sentence without violating the proscription in the statute against double counting." (Internal quotation marks omitted.) See also *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 820; *Cox* v. *Commissioner of Correction*, supra, 271 Conn. 852.

[2] The basis of the petitioner's claim may be summarized as follows. On April 20, 2011, the petitioner was charged with crimes that he committed on April 19, 2011. He was unable to make bond and, therefore, he was confined from April 20, 2011, until he was sentenced for those crimes on May 25, 2012. The petitioner also was arrested in Milford on June 3, 2011, for violation of probation for the crimes he committed on April 19, 2011. Again, he was unable to post bond, and was confined until he was sentenced for violation of probation on March 8, 2012. The petitioner's sentence for violation of probation was seven years; his criminal sentence was fourteen years. The sentences are to be served concurrently. Because the violation of probation sentence was imposed first, the 279 days of presentence confinement credit was applied to that sentence, not the longer criminal sentence. The petitioner claims that Marquette failed to inform him of the allocation of presentence confinement credit so that he could have pleaded in a timely manner so that the 279 days of presentence confinement credit was allocated to the criminal sentence imposed in New Haven.

[3] Egan represented the petitioner on the violation of probation charge pending in the judicial district of Ansonia-Milford. Marquette represented the petitioner on the criminal and violation of probation charges pending in the judicial district of New Haven. Before evidence was presented at the habeas trial, the petitioner withdrew his claim against Egan. During the habeas trial, the petitioner waived his attorney-client privilege as to conversations he had with Egan.

[4] On November 28, 2005, the petitioner was sentenced in the judicial district of Ansonia-Milford to fifteen years of incarceration, execution suspended after six years, and five years of probation after he pleaded guilty to robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). On December 8, 2005, the petitioner was sentenced under three dockets in the judicial district of New Haven for a total effective sentence of ten years of incarceration, execution suspended after five years and three years of probation.

[5] The petitioner was charged with attempt to commit robbery in the second degree in violation of General Statutes §§ 53a-135 (a) (2) and 53a-49, conspiracy to commit robbery in the second degree in violation of General Statutes §§ 53a-135 (a) (2) and 53a-48, and burglary in the third degree in violation of General Statutes § 53a-103.

[6] According to Marquette, the state's global plea offer on the New Haven charges, which included violations of probation, was "twenty [years suspended] after fifteen" but did not include the Milford violation of probation charge.

[7] Marquette entered an appearance on behalf of the petitioner on January 16, 2012.

[8] The petitioner owed nine years on the prior Milford sentence.

[9] Judge Arnold stated to the petitioner, in part: "So you owe nine years. That is what could happen as a result of a violation of probation hearing here . . . . Now, the state made an offer . . . [a]nd I am in agreement

with the offer of seven years to serve.

"Now, there is no agreement with New Haven . . . as to what they would do if, in fact, you accepted that offer here . . . . So basically, I would take your plea here and allow you basically one month to see if you can work out your New Haven matter, and I can't say for either concurrent time, but for time less than they are offering you to run concurrent with this sentence so that they would both run together *so you wouldn't have a time credit problem on one file or the other* . . . .

"So, if you admitted a violation of probation today . . . I wouldn't sentence you or your sentence wouldn't go into effect here today on a violation of probation . . . . It would give you like a one month window to see if you could work something out in New Haven close to what we're giving you here today. I can't speak for New Haven; I really can't. But it gives you an opportunity that if you can work something out there, then we can have an agreement in New Haven and some agreement here, whether it's for the same time or not, but at least the sentences would run concurrent so that *you would be able to take advantage of all of your available time credit.*

"That is the purpose for staying any sentence here. It gives you a month to see if you can work it out in New Haven. . . . But if you can't work out your New Haven case when you come back here in a month, the sentence would go into effect and you know whatever you do in New Haven basically you're on your own to try to resolve that case." (Emphasis added.)

The following colloquy also transpired:

"The Court: But understand the fact, if this plea is entered today based upon this proposed sentence and then you talk to your New Haven public defender on that date and nothing can be worked out in New Haven, it doesn't mean that we are going to vacate this sentence. This sentence will go into effect on a date subsequent to March second.

"The [Petitioner]: So I'll have a month to basically make a final—

"The Court: A little over a month. Yeah, a little over a month to try and get your New Haven public defender to resolve it in some sentence that you feel is favorable that can work with the disposition in this sentence."

[10] The following colloquy transpired between Judge Arnold and the petitioner:

"The [Petitioner]: So . . . if they come with a plea bargain or something on March second, and it's not accepted, this sentence—so I am basically—

"The Court: This sentence will go into effect on March eighth.

"The [Petitioner]: *So basically I'm caught in like a—like I have a time period—*

"The Court: *You are caught in a time credit jam, yes, you are.*

"The [Petitioner]: *Take time in New Haven, no matter what it is—*

"The Court: Well, you—nobody—no, you don't have to accept plea bargains n New Haven unless you feel it's a fair situation and that it is in your best interest to do so. What I am saying to you is that *your time computations will get different because you will be sentenced on this file and as a sentenced prisoner you will no longer be getting time credit, I believe, on the New Haven file for however long that takes to resolve.* Do you understand?

"The [Petitioner]: *I understand.*" (Emphasis added.)

[11] If the habeas court's credibility determination is not implicit in its decision, the petitioner failed to seek an articulation of the court's credibility determinations and, therefore, he failed to present an adequate record for review. See Practice Book §§ 60-5 and 61-10.

[12] Egan testified at the habeas trial, in part, as follows:

"[The Prosecutor]: Did you discuss with [the petitioner] what would happen if the New Haven case did not resolve by the day that the stay of execution was to be lifted in Milford?

"[Attorney Egan]: Oh, yeah. We . . . did that extensively and, as a matter of fact, I wrote to [the petitioner] at the beginning of December along the very lines that you've suggested. . . . [I]f my memory serves, I believe . . . there was one final pretrial conference in New Haven on December 1, in which [the petitioner] rejected the offer of twelve years. . . . I wrote him the following day, December 2, indicating to him that if he . . . if they were unable to resolve his situation in New Haven, that we were going to be forced into a situation where we were going to have to go forward with a probation hearing in Milford, and if that happened without any agreement with respect to the New Haven cases, that all his pretrial credits would go towards a resolution of the file in Milford and there would be nothing left for any . . . subsequent disposition in New Haven.

\* \* \*

"[The Prosecutor]: When [the petitioner] admitted the violation of proba-

tion in January of 2012, did you inform Attorney Marquette of that fact?

"[Attorney Egan]: Oh, yes, yes.

"[The Prosecutor]: And did you inform him about the stay of execution aspect?

"[Attorney Egan]: Yes, yes. That was all done by e-mail. . . . Attorney Marquette and I had been, you know, communicating on a fairly . . . consistent basis for about . . . a week prior to the resolution of his problems on January thirtieth. . . . Yeah, Attorney Marquette was very much in the loop as to what was going on here.

"[The Prosecutor]: What was the purpose of alerting him to the disposition in Milford?

"[Attorney Egan]: Again, to make sure that we could coordinate it, the resolution of these files, so that he did not lose any pretrial credit."

———————————————