******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COREY TURNER *v.* COMMISSIONER
OF CORRECTION
(AC 42437)

Lavine, Moll and Suarez, Js.

*Syllabus*

The petitioner, who previously had been convicted of the crimes of murder
and assault in the first degree in connection with the shooting death of
the victim, sought a writ of habeas corpus, claiming, inter alia, that the
respondent Commissioner of Correction violated his due process rights
by eliciting perjured testimony from his criminal trial counsel at his first
habeas trial. The habeas court rendered judgment dismissing in part
and denying in part the habeas petition. Thereafter, the habeas court
denied his petition for certification to appeal, and the petitioner appealed
to this court. Subsequently, the petitioner filed a motion to open the
judgment and to disqualify the judicial authority, which the court denied
and the petitioner amended his appeal. *Held*:

1. The habeas court did not abuse its discretion in denying the petition for
   certification to appeal; the habeas court reasonably determined that
   the petitioner's claims were frivolous and not debatable among jurists
   of reason.

2. The habeas court properly dismissed as nonjusticiable that count of the
   petition that alleged that the petitioner's due process rights had been
   violated due to newly discovered evidence that the respondent's counsel
   elicited perjured testimony from his criminal trial counsel at his first
   habeas trial: the court lacked authority to open the judgment rendered
   in the first habeas action and, therefore, the court could provide no
   practical relief to the petitioner on his claim, rendering the case moot;
   moreover, the petitioner's allegations regarding his criminal trial coun-
   sel's testimony at the first habeas trial did not constitute a constitutional
   violation of the petitioner's liberty and, therefore, the court did not have
   subject matter jurisdiction.

3. The habeas court did not improperly deny those counts of the petitioner's
   petition alleging suppression of and failure to preserve evidence of K-
   9 tracking of the alleged perpetrator during the police investigation of
   the murder: the court concluded that evidence of K-9 tracking had not
   been proven to exist, and the petitioner failed to demonstrate that there
   was evidence of the K-9 track that the state suppressed or the police
   failed to preserve; moreover, the court's decision was predicated in part
   on its determination that the testimony of a patrol sergeant, that if he
   had performed a K-9 track, he would have written a report, and that he
   could not recall using a K-9, was credible, and it is not the role of
   appellate courts to second-guess credibility determinations.

4. This court declined to review the petitioner's claim that the habeas court
   abused its discretion in denying his postjudgment motion to open the
   judgment and disqualify the judicial authority because the record was
   inadequate; the petitioner failed to follow the procedures required for
   disqualification, as the petitioner's affidavit and good faith certificate
   failed to comport with legal standards, the motion was not timely filed,
   there was no opportunity for a hearing to be held on the motion to
   disqualify to create a factual record for review and the petitioner failed to
   demonstrate good cause for failing to comply with the rules of practice.

Argued September 14—officially released November 3, 2020

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Westbrook, J.*; judgment
dismissing the petition in part and denying the petition
in part; thereafter, the court denied the petition for
certification to appeal, and the plaintiff appealed to this
court; subsequently, the court, *Westbrook, J.*, denied

the petitioner's motion to open the judgment and to disqualify the judicial authority, and the petitioner filed an amended appeal. *Appeal dismissed.*

*Corey Turner*, self-represented, the appellant (petitioner).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, and *JoAnne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The self-represented petitioner, Corey Turner, appeals from the judgment of the habeas court, *Westbrook, J.*, denying his petition for certification to appeal from the court's judgment dismissing in part and denying in part his second amended fifth petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion by (1) denying his petition for certification to appeal, (2) dismissing his claim that he was deprived of a fair trial during his first habeas trial, (3) denying his claims that the prosecuting authority violated his state and federal constitutional rights by failing (a) to disclose exculpatory evidence and (b) to preserve the exculpatory evidence, and (4) denying his motion to open the judgment and disqualify the judicial authority. We dismiss the appeal.

The following procedural summary provides context for the petitioner's present appeal. In 1997, the jury found the petitioner guilty of murder in violation of General Statutes § 53a-54a and assault in the first degree in violation of General Statutes § 53a-59 for fatally shooting Richard Woods in Hartford in 1995. See *State* v. *Turner*, 252 Conn. 714, 716–17, 751 A.2d 372 (2000).[1] The trial court, *Koletsky, J.*, sentenced the petitioner to a total effective term of sixty years of incarceration. *Turner* v. *Commissioner of Correction*, 86 Conn. App. 341, 342, 861 A.2d 522 (2004), cert. denied, 272 Conn. 914, 866 A.2d 1286 (2005). Our Supreme Court upheld the petitioner's conviction on direct appeal. *State* v. *Turner*, supra, 750. The petitioner subsequently filed a succession of state and federal petitions for a writ of habeas corpus, as well as, a writ of error coram nobis, motions to open and set aside judgments, and a statutory petition for a new trial.[2] None of the petitioner's myriad efforts for postconviction relief has been successful.

The issues in the present appeal are related to the denials of the petitioner's first petition for a writ of habeas corpus and his motion to open the first habeas court judgment. The relevant procedural history was summarized comprehensively by this court in *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 134 A.3d 1253, cert. denied, 323 Conn. 909, 149 A.3d 1253 (2016), in which the petitioner appealed from the judgment of the habeas court, *Cobb, J.*, claiming in part that Judge Cobb improperly determined that the petitioner's motion to open and set aside the judgment rendered by the first habeas court, *White, J.*, was time barred. Id., 558.

"The petitioner's first petition for writ of habeas corpus . . . was adjudicated in 2002. In that case, [Judge White] denied the petitioner's writ of habeas corpus alleging claims of ineffective assistance of counsel both in his underlying criminal trial and on his direct appeal.

This court dismissed the petitioner's appeal. *Turner* v. *Commissioner of Correction*, 86 Conn. App. 341, 861 A.2d 522 (2004), cert. denied, 272 Conn. 914, 866 A.2d 1286 (2005).

"During [the first] habeas trial, the petitioner alleged that his criminal trial counsel had been ineffective for failing to convince the criminal trial court to admit evidence that supported his defense of alibi. The petitioner had testified, during his criminal trial, that he was with [Fonda Williams, the mother of his child] at the time of the murder. He called [Williams] to testify and she repeated the same story. During cross-examination of the petitioner, the state questioned him about a recorded prison [telephone] call between the petitioner and [Williams], suggesting that he had fabricated the story. In an attempt to refute the state's rebuttal evidence, the petitioner's criminal trial counsel [Leon Kaatz] attempted to admit into evidence the recording of the [telephone] call between the petitioner and [Williams], but the trial court sustained the state's objection.[3]

"In his first habeas trial, the petitioner called [Kaatz] as a witness in an effort to elicit testimony that would show that he had been ineffective by failing to have the recorded [telephone] call admitted as evidence in the criminal trial. On cross-examination, [Kaatz] testified that the petitioner presented him with two witnesses who would testify to an alibi, in addition to and separate from [Williams]. [Kaatz] testified that initially during the trial, he interviewed one of the two additional witnesses and found that she was not credible and thus did not present their testimony in the petitioner's defense. The petitioner, representing himself at the habeas trial, attempted to impeach [Kaatz] through use of a prior inconsistent statement concerning the additional witnesses. The petitioner sought to admit as evidence [Kaatz'] written response to a 1997 grievance that was filed against him by the petitioner. The petitioner claimed that the written response proved that the petitioner provided [Kaatz] with only [Williams] in regard to his alibi, contradicting [Kaatz'] habeas testimony.[4] However, [Judge White] sustained the objection of the respondent . . . to the introduction of this extrinsic evidence because the habeas court concluded that the statement would be cumulative and involved a collateral matter. The next day, the petitioner moved for a mistrial because he claimed that [Kaatz] had perjured himself and the court denied him the opportunity to present evidence that would have supported that claim. The court denied the motion. Ultimately, [Judge White] denied the petitioner's writ of habeas corpus. The petitioner appealed from [Judge White's judgment], but he did not argue that the court had erred by sustaining the [respondent's] objection to his admission of the grievance response into evidence. This court dismissed the appeal. *Turner* v. *Commissioner of Correction*,

supra, 86 Conn. App. 343 . . . .

"On July 27, 2011, the petitioner filed a motion to open and set aside the . . . judgment [rendered by Judge White] on his first petition for writ of habeas corpus. The petitioner claimed that the judgment resulted from a fraud committed upon the court through the collusion of [Kaatz] and the respondent's counsel [Angela Macchiarulo] in the first habeas action. Specifically, the petitioner claimed that [Kaatz] had perjured himself in testimony before [Judge White] and that [Macchiarulo] had intentionally elicited this testimony even though she knew that it was false. During [Judge Cobb's] hearing on the motion, the petitioner argued that [Kaatz'] statement regarding multiple alibis had undermined his petition for writ of habeas corpus because it supported the respondent's contention that [Williams'] testimony as to the petitioner's alibi had been fabricated. [Judge Cobb] denied the petitioner's motion to open and set aside the judgment based on his failure to satisfy any of the factors set out in *Varley* v. *Varley*, 180 Conn. 1, 4, 428 A.2d 317 (1980), to prove that the judgment was based on fraud.[5] [Judge Cobb] also denied the petitioner certification to appeal." (Footnotes added and omitted.) *Turner* v. *Commissioner of Correction*, supra, 163 Conn. App. 558–62.

After Judge Cobb denied the motion to open and set aside the judgment in a memorandum of decision dated December 19, 2012, the petitioner filed two motions for reconsideration, which were denied. Id., 562 n.6. In June, 2013, the petitioner sought to appeal from the denial of his motion to open and set aside the judgment, but this court dismissed the appeal because the petitioner had failed to seek certification to appeal from the habeas court judgment. Id. The petitioner filed a petition for certification to appeal, which was denied in November, 2013. Id. In March, 2014, the petitioner appealed from the habeas court's denial of his petition for certification. Id.

In deciding the petitioner's appeal from the judgment, this court considered the controlling law. "Habeas corpus is a civil proceeding. . . . The principles that govern motions to open or set aside a civil judgment are well established. A motion to open and vacate a judgment . . . is addressed to the [habeas] court's discretion, and the action of the [habeas] court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) Id., 563.

"A motion to open and set aside judgment is governed by General Statutes § 52-212a and Practice Book § 17-4. . . . Section 52-212a provides in relevant part: 'Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or

set aside is filed within four months following the date on which it was rendered or passed. . . .' " (Citation omitted.) Id., 563–64.

"For claims of fraud brought in a civil action, our Supreme Court has established the criteria necessary for a party to overcome the statutory time limitation governing a motion to open and set aside judgment. *Varley* v. *Varley*, supra, 180 Conn. 4 . . . . To have a judgment set aside on the basis of fraud which occurred during the course of the trial upon a subject on which both parties presented evidence is especially difficult. . . . The question presented by a charge of fraud is whether a judgment that is fair on its face should be examined in its underpinnings concerning the very matters it purports to resolve. Such relief will only be granted if the unsuccessful party is not barred by any of the following restrictions: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different." (Internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, supra, 163 Conn. App. 564.

This court concluded that Judge Cobb "properly denied the petitioner's motion to open and set aside the judgment [rendered in the first habeas trial] because it was raised after an unreasonable delay. [Judge White] denied the petitioner's first petition for a writ of habeas corpus on January 4, 2002. More than eight years later, the petitioner filed the present motion with [Judge Cobb]. During that span of time, the petitioner did not develop any new facts or claims to support his assertion of fraud. The petitioner instead seeks to set aside [Judge White's] judgment with facts that were known to him, as well as to the habeas court, at the time of his first petition for a writ of habeas corpus. The petitioner has not offered this court any argument that justifies his lengthy delay in bringing this motion in a habeas action. The determination that the petitioner delayed an unreasonable period of time in pursuit of his claim of fraud is not debatable among jurists of reason." Id., 564–65. This court dismissed the appeal from the denial of the motion to open and set aside the judgment in the first habeas case. Id., 565.

On September 10, 2014, the petitioner filed a fifth petition for a writ of habeas corpus, which is the subject of the present appeal. He filed a second amended petition (amended petition) on May 31, 2017, in which he alleged five counts: (1) the respondent violated his rights to due process at the first habeas trial by eliciting perjured testimony from Kaatz; (2) Kaatz rendered ineffective assistance at the criminal trial by failing to reha-

bilitate the credibility of the petitioner and Williams after their credibility had been impeached by the state with false claims of a recently fabricated alibi defense; (3) Kaatz rendered ineffective assistance by failing to investigate deficiencies in the police investigation; (4) the state suppressed exculpatory evidence of K-9 tracking during the police search; and (5) the police department failed to preserve exculpatory evidence of K-9 tracking during the police search. Prior to trial, the petitioner withdrew his second and third counts. In her September 17, 2018 memorandum of decision, Judge Westbrook concluded that the petitioner's claim that Kaatz testified falsely at the first habeas trial was not justiciable and dismissed it. She also concluded that the evidence that the petitioner claims the state suppressed and that the police department did not preserve never existed and, therefore, she denied the petitioner's second and third counts.[6] The habeas court also denied the petitioner's petition for certification to appeal. The petitioner appealed on December 31, 2018.

On January 7, 2019, the petitioner filed a motion with the habeas court to open the judgment and to disqualify the judicial authority (motion to open and disqualify). Judge Westbrook denied the motion to open and disqualify on January 15, 2019. On February 15, 2019, the petitioner filed an amended appeal to challenge the habeas court's denial of his motion to open and disqualify filed postjudgment. Additional facts will be set forth as necessary.

I

The petitioner first claims that the habeas court abused its discretion by denying his petition for certification to appeal. We conclude that the habeas court did not abuse its discretion.

Pursuant to General Statutes § 52-470 (g), a petitioner may appeal from the decision of the habeas court if "the judge before whom the case was tried . . . [certifies] that a question is involved in the decision which ought to be reviewed by the court having jurisdiction . . . ." Section 52-470 (g) was enacted to discourage frivolous habeas corpus appeals by conditioning the petitioner's right to appeal upon obtaining certification from the habeas court. See *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994). A petitioner who was denied certification to appeal but nonetheless appeals must first demonstrate that the denial of certification constituted an abuse of the habeas court's discretion. See id.

A petitioner can establish that the habeas court abused its discretion by denying certification to appeal if the petitioner can demonstrate that either "[1] the issues are debatable among jurists of reason; [2] that a court could resolve the issues [in a different manner]; or [3] that the questions are adequate to deserve encour-

agement to proceed further." (Emphasis omitted; internal quotation marks omitted.) *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991); see also *Simms* v. *Warden*, supra, 230 Conn. 616. Pursuant to *Simms*, the reviewing court consequently must consider the merits of the petitioner's claims in order to determine whether a certifiable issue exists under *Lozada*. *Simm*s v. *Warden*, supra, 616. "In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 449, 936 A.2d 611 (2007). Pursuant to our review of the petitioner's claims as addressed herein, we conclude that the habeas court reasonably determined that the petitioner's claims are frivolous and denied certification to appeal.

II

The petitioner claims that the court improperly dismissed count one of his amended petition as nonjusticiable. We disagree that the habeas court improperly determined that count one was nonjusticiable.

A claim regarding the court's subject matter jurisdiction raises a question of law. See *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 279, 933 A.2d 256 (2007). The plenary standard of review applies to questions of law. Id.

The following facts are relevant to this claim. In count one of his amended petition, the petitioner alleged that his due process rights were violated due to newly discovered evidence related to the first habeas trial in 2002. The petitioner alleged that, Macchiarulo, counsel for the respondent, elicited testimony from Kaatz that she knew or should have known was perjured, false or misleading and that there was a reasonable likelihood that the false testimony could have affected the judgment Judge White rendered.

In its return, the respondent pleaded that the claim alleged in count one failed to state a cause of action and was otherwise barred by the doctrine of res judicata or collateral estoppel.[7] The respondent argued that, although the petitioner claimed that he was entitled to a new habeas corpus trial on the basis of false testimony allegedly given at the first habeas trial, he was not challenging the lawfulness of his custody. Furthermore, the respondent argued, the purpose of habeas corpus is to challenge the legality of custody and because the petitioner did not challenge the legality of his custody in count one, the claim is not cognizable.

The habeas trial was held on July 26 and September 20, 2017. The habeas court issued a memorandum of decision on September 17, 2018, after the parties sub-

mitted posttrial briefs. In its memorandum of decision, the habeas court demonstrated its familiarity with the factual history of the underlying crime as set forth in *State* v. *Turner*, supra, 252 Conn. 717–18, and the procedural history set forth in this court's opinion in *Turner* v. *Commissioner of Correction*, supra, 163 Conn. App. 559–61 (dismissing appeal from denial of motion to open judgment in first habeas trial).[8] The court agreed with the respondent that there was no relief that it could provide the petitioner and, therefore, that the claim was not justiciable.

The habeas court cited the controlling law. "A petition for a writ of habeas corpus is a civil action . . . ." (Citation omitted.) *Gonzalez* v. *Commissioner of Correction*, 127 Conn. App. 454, 460, 14 A.3d 1053 (2011). "A court will not resolve a claimed controversy on the merits unless it is satisfied that the controversy is justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) *that the determination of the controversy will result in practical relief to the complainant.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Mejia* v. *Commissioner of Correction*, 112 Conn. App. 137, 146, 962 A.2d 148, cert. denied, 291 Conn. 910, 969 A.2d 171 (2009).

A habeas court may not set aside or vacate the judgment of a prior habeas court. General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

Our Supreme Court has stated that Connecticut's "jurisprudence concerning the trial court's authority to overturn or to modify a ruling in a particular case assumes, as a proposition so basic that it requires no citation of authority, that any such action will be taken only by the trial court with continuing jurisdiction over the case, and that the only court with continuing jurisdiction is the court that originally rendered the ruling." *Valvo* v. *Freedom of Information Commission*, 294 Conn. 534, 543–44, 985 A.2d 1052 (2010). "This assumption is well justified in light of the public policies favoring consistency and stability of judgments and the orderly administration of justice." Id., 545. It would wreak havoc on the judicial system to permit a trial court to second guess the judgment of another trial court in a separate proceeding. Id. "This is especially true when a direct challenge to the original ruling can be made by any person at any time in the trial court

with continuing jurisdiction"; id.; as in the present case. The petitioner took a direct appeal from his criminal conviction, which was denied; *State* v. *Turner*, supra, 252 Conn. 714; and from the denial of his first petition for a writ of habeas corpus. *Turner* v. *Commissioner of Correction*, supra, 86 Conn. App. 341.

In the present case, Judge Westbrook lacked authority to open the judgment rendered in the first habeas action. For that reason, she was not able to render practical relief to the petitioner on count one. "[C]ourts are established to resolve actual controversies [and] before a claimed controversy is entitled to a resolution on the merits it must be justiciable." (Internal quotation marks omitted.) *Valvo* v. *Freedom of Information Commission*, supra, 294 Conn. 540. If the court is not capable of providing practical relief to the complainant, the case is moot. Id., 541. Mootness is a question of justiciability that implicates the court's subject matter jurisdiction. Id. If a court lacks subject matter jurisdiction over an alleged claim, the claim must be dismissed. See, e.g., *O'Reilly* v. *Valletta*, 139 Conn. App. 208, 216, 55 A.3d 583 (2012), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013).[9]

The petitioner also claims that the habeas court improperly dismissed count one for lack of subject matter jurisdiction because, as a court of equity, it was "permitted to fashion a remedy or provide practical relief commensurate with the scope of the constitutional violation alleged . . . ." The respondent contends that the petitioner's claim that Kaatz testified falsely at the first habeas trial, not at his criminal trial, does not implicate a constitutional right. We agree with the respondent. "Subject matter jurisdiction for adjudicating habeas petitions is conferred on the Superior Court by General Statutes § 52-466, which gives it the authority to hear those petitions that allege illegal confinement or deprivation of liberty." (Internal quotation marks omitted.) *Anthony A.* v. *Commissioner of Correction*, 159 Conn. App. 226, 234, 122 A.3d 730 (2015).[10]

"Habeas corpus provides a special and extraordinary legal remedy for illegal detention. . . . The deprivation of legal rights is essential before the writ may be issued. . . . Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. . . . When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated." (Citations omitted; internal quotation marks omitted.) *Vincenzo* v. *Warden*, 26 Conn. App. 132, 137–38, 599 A.2d 31 (1991). In the present case, the petitioner's allegations regarding Kaatz' testimony do not constitute a constitutional violation of the petitioner's liberty and, therefore, the habeas court had no subject matter jurisdiction. When a court finds that it lacks jurisdiction, it must dismiss the case. See *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 351, 542 A.2d 672 (1988), overruled on other

grounds by *Mangiafico* v. *Farmington*, 331 Conn. 404, 425, 204 A.3d 1138 (2019).

In the present case, the habeas court lacked subject matter jurisdiction because the petitioner's claim is not justiciable and, therefore, the habeas court properly dismissed count one of the petition.

### III

The defendant's second claim is that the habeas court abused its discretion by denying those counts alleging violation of his constitutional rights under the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the constitution of Connecticut in that (a) the state suppressed evidence of a K-9 track used during the police investigation of the crime scene in violation of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963),[11] and (b) the police failed to preserve evidence of the K-9 track in violation of *Arizona* v. *Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988),[12] and *State* v. *Morales*, 232 Conn. 707, 657 A.2d 585 (1995). We disagree.

The petitioner has predicated his claim on the following testimony presented at his criminal trial. A Hartford police officer, Mark Castagna, was dispatched to the scene of the shooting and notified the patrol commander, Sergeant Stephen O'Donnell, of the seriousness of Woods' injuries. The crime scene had been secured when O'Donnell arrived. Castagna learned from Betty Lewis, who lived at 141 Homestead Avenue, that the perpetrator of the shooting came from the backyards of 143-145 Homestead Avenue and fled there after the shooting. According to Castagna, it would have been normal to call in a K-9 to track of the perpetrator in an investigation such as this, but he did not know whether it was done in this case. The state's lead investigator, Keith Knight, responded to the crime scene after it had been processed. According to Knight, a police sergeant would have been in charge of the investigation. Knight reviewed the police reports submitted to determine whether follow-up was needed. He did not know whether a K-9 unit was called to assist in the investigation, and he did not see one. According to Knight, it would have been good police work to call in a K-9 unit in a case such as this. In 2015, the petitioner retained private investigators to investigate whether there was evidence to challenge his conviction.

On the basis of the record and evidence presented at the habeas trial, Judge Westbrook made the following findings in her memorandum of decision. "At the petitioner's criminal trial [Castagna], Detective Jim Chrystal and Detective Keith Knight were all questioned on whether a K-9 unit was present at the crime scene during the investigation on August 11 and August 12, 1995, and none of the witnesses could recall seeing one there. At

the present habeas trial, the petitioner presented the court with a supplemental police report involving the crime scene filed by [O'Donnell, who is now retired]. The supplemental report does not reference any use of a K-9. The petitioner also presented documentary evidence indicating that [O'Donnell] attended a K-9 training program from February 2, 1992, to April 17, 1992.

"[The petitioner's] [p]rivate investigators, Thomas LaPointe and Jacqueline Bainer, testified at the habeas trial as to interviews they each had with [O'Donnell]. LaPointe's report . . . indicates that [O'Donnell] informed him that he had a vague recollection of performing a K-9 track in the area the crime occurred, but that he had performed tracking in that area on other occasions so he could not be certain that his recollection was related to the petitioner's case. Bainer's report . . . indicates that [O'Donnell] informed her that he could not recall if he was handling a K-9 [unit] during the investigation of the petitioner's case, but he would have reported it if the dog had hit upon a scent.

"At the habeas trial [O'Donnell] testified that on the night of the underlying incident, he responded to the crime scene as a patrol sergeant. He also testified that he believed he was a K-9 handler during that time, but that there was a period of time where he stopped being a K-9 handler so that he could accept a promotion to sergeant. [O'Donnell] further testified that he does not recall whether a track was performed that night, but that he would have written a report if he had performed one. The court finds [O'Donnell's] *testimony to be credible.*"[13]  (Emphasis added.) We now turn to the petitioner's claims regarding evidence of an alleged K-9 track at the scene of the shooting.

### A

In count two of the amended petition, the petitioner alleged that the state suppressed evidence that would have raised opportunities for the defense to attack the thoroughness or good faith of the police investigation. Specifically, the petitioner alleged that the state failed to disclose the use of a K-9 to track the perpetrator of the crime.

In its memorandum of decision, the habeas court found that "there was no evidence presented that a K-9 track actually occurred during the course of the police investigation in the petitioner's case. The police officers who were present at the scene and testified at the underlying criminal trial could not recall the use of a K-9 during the investigation. . . . O'Donnell, a trained K-9 handler present at the crime scene, testified that he could not recall the use of a K-9 during the investigation of the petitioner's case. There is no reference to the use of a K-9 team in any of the police reports submitted. As a result, a claim that the state suppressed such evi-

dence that has not been proven to exist cannot survive." The court, therefore, denied count two of the amended petition.

B

In count three of the amended petition, the petitioner alleged that the Hartford Police Department violated his constitutional right to due process because it failed, in bad faith, to document or otherwise preserve material scientific or technical evidence, i.e., dog tracking evidence, which was subject to misinterpretation by the jury.

With respect to this count, in which the petitioner alleged a violation of *Arizona* v. *Youngblood*, supra, 488 U.S. 51, the habeas court noted that in *State* v. *Morales*, supra, 232 Conn. 707, our Supreme Court "rejected the bad faith litmus test from *Youngblood* as inadequate to determine whether the defendant had been afforded due process under the state constitution, and instead [the court] incorporated the *Asherman*[14] balancing test as the appropriate framework for deciding whether the failure of the police to preserve evidence deprived the defendant of his state constitutional rights to due process. . . . Accordingly, applying the *Asherman* test, [the court] weigh[s] the reasons for the unavailability of the evidence, the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury and the prejudice to the defendant." (Citation omitted; footnote added.) *State* v. *Estrella*, 277 Conn. 458, 483, 893 A.2d 348 (2006). The habeas court found no proof that evidence of the K-9 track the petitioner alleged that the police failed to preserve actually existed. The court therefore denied count three of the amended petition.

C

We thoroughly have reviewed the record and the briefs of the parties, and conclude that the petitioner has failed to demonstrate that the habeas court improperly denied counts two and three of his amended petition regarding the alleged suppression and failure to preserve K-9 evidence. The petitioner has failed to demonstrate that there was evidence that the state suppressed or that the police failed to preserve. Moreover, the habeas court's decision is predicated in part on its credibility determination. It is not the role of appellate courts to second-guess credibility determinations made by the habeas court. See *Fields* v. *Commissioner of Correction*, 179 Conn. App. 567, 577, 180 A.3d 638 (2018). The petitioner's claims regarding suppressed or unpreserved evidence of a K-9 track therefore fail.

IV

In his amended appeal, the petitioner claims that the habeas court abused its discretion by denying his postjudgment motion to open the judgment and disqualify the judicial authority (motion to open and disqual-

ify). The respondent contends that the claim is not reviewable because the record is inadequate due to the petitioner's failure to comply with Practice Book § 1-23. We agree that the claim is not reviewable.

The record discloses the following procedural history. The habeas court issued its memorandum of decision on September 17, 2018, and the petitioner filed an appeal therefrom on December 31, 2018. On January 7, 2019, almost four months after the judgment was rendered, the petitioner filed the motion seeking to open the September 17, 2018 judgment dismissing count one and denying counts two and three of his amended petition and the recusal of Judge Westbrook "for the reasons set forth in the accompanying memorandum of law . . . ." In the accompanying memorandum of law, the petitioner stated that "the court's ruling dismissing the claims raised in count one of his amended petition evidences a deep-seated favoritism for the respondent warden or antagonism towards the petitioner that made a fair judgment on the merits of the petitioner's claims impossible." He represented that the record demonstrates that, during the habeas trial, Macchiarulo uttered a false statement in violation of General Statutes § 53a-156[15] by testifying that Kaatz' testimony during the first habeas trial was not an indication of perjury. The petitioner also represented that the habeas court hindered prosecution in violation of General Statutes § 53a-167 (a)[16] by failing to hold Macchiarulo accountable for having committed perjury before the court or to otherwise report her conduct to authorities.

On January 15, 2019, the habeas court denied the motion to open and disqualify.[17] The petitioner requested, pursuant to Practice Book § 64-1, that the habeas court file a memorandum of decision regarding its denial of the motion to open and disqualify. On February 15, 2019, the petitioner filed an amended appeal to challenge the habeas court's denial of his motion to open and disqualify.

On February 25, 2019, the habeas court issued an order pursuant to the petitioner's request.[18] The court stated: "The principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book [§ 17-4] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation. . . . *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 94, 952 A.2d 1 (2008). Practice Book § 1-22 (a) provides in relevant part: A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Rule 2.11 of the Code of Judicial Conduct . . . . Rule 2.11 (a) of the Code of Judicial Conduct states in pertinent part: A judge shall disqualify himself or herself in any proceeding

in which the judge's impartiality might be reasonably questioned . . . . Practice Book § 1-23 provides: A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time." (Internal quotation marks omitted.)

The court found that the petitioner had alleged that its denial of his petition for a writ of habeas corpus "evidences a deep-seated favoritism for the respondent warden or antagonism toward the petitioner that made a fair judgment on the merits of the petitioner's claims impossible." The petitioner alleges that the court "rendered criminal assistance" to Macchiarulo by declining to hold her in contempt or to report her to the appropriate authorities for having committed perjury for soliciting and offering false testimony from Kaatz in a prior habeas proceeding. The court, however, found that the petitioner had failed to demonstrate that perjury in violation of § 53-156, in fact, had occurred. See footnote 15 of this opinion. The court found that the petitioner had not shown that Kaatz intentionally made a material false statement under oath or that Macchiarulo knew or should have known that Kaatz intentionally made a material false statement under oath.

The habeas court also found that the petitioner had failed to demonstrate that the court's failure to take certain action "rendered criminal assistance" for purposes of the offense of hindering prosecution pursuant to General Statutes § 53a-165.[19] The court found no indication that it had committed any of the specific acts that constitute the offense of hindering prosecution as defined by § 53a-165.

*Significantly*, the habeas court also found that the petitioner had failed to file the motion to disqualify with a proper affidavit or within ten days of the proceeding as required by Practice Book § 1-23. The petitioner also had not demonstrated good cause for failing to do so. The court concluded, therefore, that the petitioner had failed to demonstrate a good and compelling reason for opening the judgment or questioning the court's impartiality for disqualification purposes and reaffirmed its denial of the motion to open and disqualify.

We decline to review the petitioner's claim due to an inadequate record because the petitioner failed to follow the procedures required for disqualification. Practice Book § 1-23 provides that "[a] motion to disqualify the judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the

motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time." The respondent argues that we should not review the petitioner's claim because he failed to file the motion to open and disqualify at least ten days prior to the habeas trial and failed to file an affidavit and good faith certificate, citing *Olson* v. *Olson*, 71 Conn. App. 826, 830, 804 A.2d 851 (2002). The failure to file an affidavit and good faith certificate, however, is not always fatal to a motion to disqualify. See *State* v. *Milner*, 325 Conn. 1, 6–10, 155 A.3d 730 (2017), and cases cited therein. The petitioner argues that he, in fact, filed an affidavit with the motion to open and disqualify.

Our review of the record disclosed that the petitioner attached to the motion to open and disqualify a document titled "Petitioner's Affidavit Filed in Support of his Motion for Recusal." The document, which is signed by the petitioner but not witnessed, states: "The undersigned is over the age of 21, and has personal knowledge of the facts stated herein. In particular, the facts stated in the undersigned's memorandum of law dated January 3, 2019 are hereby incorporated by reference and made the facts of this affidavit. See Petitioner's Memorandum of Law dated January 3, 2019. Pursuant to Connecticut Practice [Book] § 1-23 the undersigned hereby [certifies] that this motion is made in good faith." *Milner* teaches that the import of an affidavit is to provide a factual record. *State* v. *Milner*, supra, 325 Conn. 9–10. Evidence of bias sufficient to support a claim of judicial disqualification must be "based on more than opinion or conclusion." (Internal quotation marks omitted.) *State* v. *Bunker*, 89 Conn. App. 605, 613, 874 A.2d 301 (2005), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006). "Our Supreme Court has indicated that, where there is a factual dispute involved in a claim of judicial bias, an evidentiary hearing may be in order, and it has implied that the hearing be before another judge. See *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 750–53, 444 A.2d 196 (1982)." *Szypula* v. *Szypula*, 2 Conn. App. 650, 653, 482 A.2d 85 (1984).

Although the petitioner's affidavit does not comport with legal standards nor does his purported good faith certificate, we need not decide that the record is inadequate for review on that basis alone. The petitioner's appellate claim is not reviewable because his motion to open and disqualify was not timely filed and there was no opportunity for a hearing to be held on the motion to disqualify to create a factual record for review. Practice Book § 1-23 provides that the motion be filed at least ten days before the judicial proceeding. If the motion is not filed within that time, good cause must be shown for failure to do so. In his appellate brief, the petitioner responds to the respondent's position that the claim is not reviewable, stating that the motion

to open and disqualify is "based upon an issue that did not materialize until after trial" and therefore he can demonstrate good cause for failing to comply with the rules of practice. He relies on *State* v. *Rizzo*, 303 Conn. 71, 122, 31 A.3d 1094 (2011) ("[b]ecause the defendant could not have been aware of this claimed basis for disqualification at the time of the [relevant proceedings], he cannot be faulted for his failure to raise it in an objection"). The petitioner's argument is disingenuous, to say the least. For almost two decades, the petitioner has represented himself in habeas appeals in this court trying to undo his criminal conviction.[20]

The petitioner's argument also is unpersuasive. He waited almost four months after the habeas court rendered judgment on his petition to file the motion to open and disqualify. The petitioner may not legitimately claim judicial bias after he receives a judgment that is not to his liking. See *McGuire* v. *McGuire*, 102 Conn. App. 79, 83, 924 A.2d 886 (2007) (parties not permitted to anticipate favorable decision, reserving right to impeach it or set it aside if it happens to be against them, for cause known to them before or during trial).

"Although we allow [self-represented parties] some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . Self-represented parties are not afforded a lesser standard of compliance and although we are solicitous of the rights of [self-represented parties] . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law." (Internal quotation marks omitted.) *In re Enrico S.*, 136 Conn. App. 754, 757, 46 A.3d 173 (2012). It is the policy of Connecticut courts to be solicitous of self-represented parties and to construe the rules of practice liberally "when it does not interfere with the rights of other parties . . . ." (Emphasis omitted; internal quotation marks omitted.) *Rosato* v. *Rosato*, 53 Conn. App. 387, 390, 731 A.2d 323 (1999). Our liberal policy toward self-represented parties is, however, "severely curtailed in cases where it interferes with the rights of other parties." Id.

The petitioner in the present case is no ordinary self-represented party in the Appellate Court, as footnote 2 of this opinion and the record in the present appeal demonstrate. He files habeas petitions and appeals frequently. He is well versed in the rules of practice as demonstrated by his several petitions for a writ of habeas corpus and appeals, many motions for articulation, to reargue, to reopen and set aside and for permission to file late. The petitioner's failure to comply with the requirements of Practice Book § 1-23 has interfered with the rights of the respondent who was not afforded an opportunity to respond and to appear at a hearing on the motion. Moreover, the petitioner's claims against the habeas court are of the most serious nature in that

they attack the court's impartiality and integrity and the fairness of our judicial system. Motions to disqualify are to be filed no fewer than ten days before the judicial proceeding in order for the factual allegations against the court to be adjudicated by a different judge. The path taken by the petitioner interfered with the respondent's rights and was an affront to the court itself. We decline to review the claim because the record is inadequate.

For the reasons stated herein, we conclude that the habeas court did not abuse its discretion by denying certification to appeal from the judgment dismissing in part and denying in part the petitioner's second amended fifth petition for a writ of habeas corpus. The issues are not debatable among jurists of reason. See *Lozada* v. *Deeds*, supra, 498 U.S. 431–32.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The jury reasonably could have found the following facts. On the evening of August 11, 1995, the petitioner and Woods had an argument in front of a house at 141 Homestead Avenue in Hartford. *State* v. *Turner*, supra, 252 Conn. 717. At approximately 11 p.m., a group of people were standing in front of the house when the petitioner and his brother, Charles Turner, drove by the house in a tan Oldsmobile. Id., 717–18. Shortly thereafter, Charles Turner, alone in the car, drove back and parked the car. Id., 718. Charles Turner got out of the car and approached the group standing in front of the house and began "dancing around." Id., 718. Meanwhile, the petitioner "wearing a mask and dark clothing, approached the group and shot at Woods with a handgun. . . . Woods shouted 'Boku shot me. Boku did it.' 'Boku' is [the petitioner's] street name." Id. Darius Powell and Kendrick Hampton recognized the petitioner as the assailant. Id. The petitioner escaped by running behind 141 Homestead Avenue and through the yards of other houses on the street. Id. "Charles Turner, who had jumped back into the tan Oldsmobile when the shooting began, drove down Homestead Avenue and picked up [the petitioner] four houses away." Id.

[2] See *Turner* v. *Commissioner of Correction*, supra, 86 Conn. App. 341 (appeal from denial of petition alleging ineffective assistance of trial and appellate counsel); *Turner* v. *Commissioner of Correction*, 97 Conn. App. 15, 902 A.2d 716 (appeal from dismissal of petition alleging ineffective assistance of trial counsel), cert. denied, 280 Conn. 922, 908 A.2d 546 (2006); *Turner* v. *Dzurenda*, 596 F. Supp. 2d 525 (D. Conn. 2009) (petition alleging state habeas court unreasonably applied *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 672 (1984)), aff'd, 381 Fed. Appx. 41 (2d Cir.), cert. denied, 562 U.S. 1032, 131 S. Ct. 574, 178 L. Ed. 2d 419 (2010); *Turner* v. *Commissioner of Correction*, 118 Conn. App. 565, 984 A.2d 793 (2009) (appeal from denial of petition alleging ineffective assistance of first habeas appellate counsel), cert. denied, 296 Conn. 901, 991 A.2d 1104 (2010); *Turner* v. *Commissioner of Correction*, 134 Conn. App. 906, 40 A.3d 345 (appeal from denial of writ of error coram nobis), cert. denied, 307 Conn. 904, 53 A.3d 219 (2012); *Turner* v. *Commissioner of Correction*, 139 Conn. App. 906, 55 A.3d 626 (appeal from denial of motion to set aside judgment of conviction), cert. denied, 308 Conn. 946, 67 A.3d 289 (2012); *Turner* v. *Warden*, Superior Court, judicial district of Tolland, CV-11-4003901-S (July 9, 2013); *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 134 A.3d 1253 (appeal from denial of motion to open first habeas judgment), cert. denied, 323 Conn. 909, 149 A.3d 1253 (2016); *Turner* v. *State*, 172 Conn. App. 352, 1604 A.2d 398 (2017) (appeal from denial of petition for new trial).

In addition, the petitioner has filed an appeal from the denial of his sixth petition for a writ of habeas corpus, which currently is pending in this court. *Turner* v. *Commissioner of Correction*, Connecticut Appellate Court, Docket No. AC 43401 (appeal filed September 16, 2019).

[3] On direct appeal, the petitioner claimed that the trial court abused its discretion by sustaining the state's objection to the tape recording of the petitioner's conversation with Williams. *State* v. *Turner*, supra, 252 Conn.

724. Our Supreme Court concluded that the trial court did not abuse its discretion, reasoning that the petitioner "did not point to anything in the offered tape that would have been helpful to his case with regard to the state's rebuttal evidence. Rather, he argued that the offered tape would substantiate his testimony on cross-examination concerning his conversation with Williams. Bolstering of defense evidence is not permitted on surrebuttal." Id.

[4] In deciding the appeal, this court carefully reviewed the grievance response and concluded that it did not reveal a clear discrepancy between the response and Kaatz' testimony at the criminal trial. "In the 1997 grievance, [Kaatz] was writing in response to the petitioner's specific claims that he did not interview the witness who supported his alibi: 'On Friday, July 25, at the end of the first week of evidence in the trial, Petitioner did, for the first time, reveal to me the identity of his alibi witness, her name was Fonda Williams.' The state argues that any discrepancy was explained by [Kaatz] in his response to a second grievance filed by the petitioner. The statement was made in a grievance response dated March 21, 2003; a document that the petitioner included in his pretrial brief to the habeas court supporting his motion to open and vacate the judgment. [Kaatz] stated: 'My dialogue with these women took place 7 years ago and my recollection of precisely what was said may be sketchy. I do recall, however, that at no time did either of these women tell me they were acting on their own. Further . . . in future dialogues I had with [the petitioner] about these women, [the petitioner] never stated or even suggested that the two women were acting on their own without his knowledge.' " *Turner* v. *Commissioner of Correction*, supra, 163 Conn. App. 560 n.3.

[5] Judge Cobb stated: "The petitioner's delay in filing the motion to open is unreasonable, the prosecution of said motion has not been diligent, there is no clear proof of perjury or fraud, and there is no reasonable probability that the result of a new habeas trial will be different." (Internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, supra, 163 Conn. App. 562 n.5.

[6] In her memorandum of decision, Judge Westbrook renumbered the petitioner's counts and referenced them as count one, count two, and count three. We have adopted the habeas court's reference to the counts of the amended fifth habeas petition.

[7] Because we conclude that the habeas court properly concluded that the allegations contained in count one were not justiciable, we decline to address the respondent's res judicata argument.

[8] Judge Westbrook noted when dismissing the petitioner's appeal from the motion to open that "the petitioner did not develop any new facts or claims to support his assertion of fraud. The petitioner instead seeks to set aside the habeas court's judgment with facts that were known to him, as well as to [Judge White], at the time of his first petition for a writ of habeas corpus." *Turner* v. *Commissioner of Correction*, supra, 163 Conn. App. 565–66.

[9] The habeas court also pointed out that a habeas petitioner seeking relief on a claim that a witness testified falsely at the habeas trial may file (1) a motion to open and set aside the judgment pursuant to § 52-212a and Practice Book § 17-4, or (2) a petition for a new trial pursuant to General Statutes § 52-270 and Practice Book § 17-4A. The respondent correctly notes that the petitioner has availed himself of those options, albeit without success.

[10] The petitioner also claims on appeal that the habeas court failed to exercise its discretion to fashion a remedy for the relief sought. As we have pointed out, the habeas court had no authority to affect the judgments rendered in the petitioner's criminal or first habeas trials. Moreover, the basic premise of the petitioner's claim that there is newly found evidence is fundamentally flawed. During the first habeas trial, the petitioner moved for a mistrial on the basis of Kaatz' testimony.

[11] "[I]n *Brady* v. *Maryand*, [supra, 373 U.S. 87], the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the defendant must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the defendant, and (3) it was material [either to guilt or to punishment]." (Internal quotation marks omitted.) *State* v. *Kelsey*, 93 Conn. App. 408, 418, 889 A.2d 855, cert. denied, 277 Conn. 928, 895 A.2d 800 (2006).

[12] "The United States Supreme Court, employing a federal due process

clause analysis, explained that when confronted with a claim that the state failed to preserve evidence that could have been subjected to tests, the results of which might have exonerated the defendant; *Arizona* v. *Youngblood*, [supra, 488 U.S. 57]; unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." (Internal quotation marks omitted.) *State* v. *Barnes*, 127 Conn. App. 24, 30–31, 15 A.3d 170 (2011), aff'd, 308 Conn. 38, 60 A.3d 256 (2013). But see *State* v. *Morales*, supra, 232 Conn. 720–27 (applying balancing test under constitution of Connecticut).

[13] On appeal, the respondent notes that a determination of a habeas claim that required "the court to perform its legitimate and essential role of weighing and evaluating the credibility of conflicting testimony does not, by itself, render a court's conclusion debatable among jurists of reason for the purpose of appellate review." (Internal quotation marks omitted.) *Bellino* v. *Commissioner of Correction*, 75 Conn. App. 743, 748, 817 A.2d 704, cert. denied, 264 Conn. 915, 826 A.2d 1159 (2003). The respondent argues that because credibility determinations are not reviewable for error, they necessarily are not debatable among reasonable jurists, subject to a different resolution or deserving of further argument, citing *Washington* v. *Commissioner of Correction*, 166 Conn. App. 331, 344–45, 141 A.3d 956, cert. denied, 323 Conn. 912, 149 A.3d 981 (2016). We agree with the respondent.

[14] See *State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 3d 814 (1985).

[15] General Statutes § 53a-156 (a) provides in relevant part: "A person is guilty of perjury if, in any official proceeding, such person intentionally, under oath or in an unsworn declaration . . . makes a false statement swears, affirms or testifies falsely, to a material statement which such person does not believe to be true."

[16] General Statutes § 53a-167 (a) provides: "A person is guilty of hindering prosecution in the third degree when such person renders criminal assistance to another person who has committed a class C, D or E felony or an unclassified felony for which the maximum penalty is imprisonment for ten years or less but more than one year."

[17] On February 28, 2019, the petitioner filed a motion for articulation of the habeas court's September 17, 2018 memorandum of decision denying his petition for a writ of habeas corpus. The court denied the motion for articulation on March 14, 2019. On April 1, 2019, the petitioner filed a motion for review of the habeas court's denial of his motion for articulation with this court. This court granted the motion for review but denied the relief requested on May 16, 2019.

On April 9, 2019, the petitioner filed a revised motion for summary reversal of the habeas court's judgment, which was directed to the postjudgment motion to open and disqualify underlying the amended appeal. On May 16, 2019, this court denied the revised motion for summary reversal.

[18] The habeas court first noted that the petitioner had filed numerous posttrial pleadings during the pendency of the present appeal, including the motion to open and disqualify. The court opined that given the procedural posture of the case, the motion to open and disqualify should not be considered a final judgment for purposes of Practice Book § 64-1 (a), and that it was illogical for the motion to open and disqualify to constitute a final judgment for purposes of appeal when there is an appeal pending from the judgment on the merits after trial. The court, nevertheless, set forth its reasons for denying the motion to open and disqualify.

[19] General Statutes § 53a-165 provides that "a person 'renders criminal assistance' when, with intent to prevent, hinder or delay the discovery or apprehension of, or the lodging of a criminal charge against, another person whom such person knows or believes has committed a felony or is being sought by law enforcement officials for the commission of a felony, or with intent to assist another person in profiting or benefiting from the commission of a felony, such person: (1) Harbors or conceals such person; or (2) warns such other person of impending discovery or apprehension; or (3) provides such other person with money, transportation, weapon, disguise or other means of avoiding discovery or apprehension; or (4) prevents or obstructs, by means of force, intimidation or deception, any person from performing an act which might aid in the discovery or apprehension of such person or in the lodging of a criminal charge against such person; or (5) suppresses, by an act of concealment, alteration or destruction, any physical evidence which might aid in the discovery or apprehension of such other person or in the lodging of a criminal charge against such other person, or (6) aids

such other person to protect or expeditiously profit from an advantage derived from such crime."

[20] In the twenty-three years since the petitioner murdered Woods, he has freely leveled serious, unsubstantiated accusations at a number of people. We view this claim to be another such accusation.

———————————————