BARRY M. JACOBS *v.* JOSEPH FAZZANO ET AL.
(AC 19357)

Foti, Spear and Healey, Js.

Argued May 4—officially released September 5, 2000

*Patrick Tomasiewicz,* for the appellants (defendants).

*Dana P. Lonergan,* for the appellee (plaintiff).

*Opinion*

HEALEY, J. This is an appeal by the defendants[1] from the granting of a petition for a new trial, pursuant to

---

[1] At the time of the institution of this action the original defendants were Joseph Fazzano and Elizabeth McKernan. Since that time, Joseph Fazzano has died and Martha Fazzano, executrix of the estate of Joseph Fazzano, has been substituted as a plaintiff. Barry Jacobs remains as the plaintiff.

General Statutes § 52-270,[2] to the plaintiff. Thereafter, the trial court sustained the plaintiff's objection to the defendant's motion to arrest its judgment granting the new trial. This appeal followed. We reverse the judgment granting the new trial.

Certain background circumstances will put the issues and circumstances into perspective for our analysis and discussion. The plaintiff, Barry Jacobs, a physician, commenced the present action against Joseph Fazzano and Elizabeth McKernan in May, 1996, seeking a new trial in *Fazzano* v. *Malpractice Research, Inc.*, Superior Court, judicial district of Hartford, Docket No. 0388211 (underlying action).[3] The substance of the underlying action was alleged to be a contract between McKernan through her attorney, Fazzano, and Jacobs and Malpractice Quality Foundation, Inc. (MQF), pursuant to which Jacobs and MQF agreed to provide Nicholas Criares to testify as an expert medical witness in McKernan's medical malpractice case against Hartford Hospital and Richard Jones. In the underlying action, McKernan and Fazzano claimed essentially that Jacobs failed to ensure that Criares appear and testify at McKernan's trial and

---

[2] General Statutes § 52-270 (a) provides: "The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the Superior Court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action.

"(b) An affidavit signed by any party or his or her attorney shall be presumptive evidence of want of actual notice."

[3] The underlying action was brought by a multicount complaint alleging, inter alia, breach of contract, negligence, intentional interference with contractual relations, misrepresentation, a violation of the covenant of good faith and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

that as a result of this alleged breach of contract, McKernan was forced to settle her case for a figure less than its actual value and that Fazzano received a reduced attorney's fee.

In February, 1991, attorney Dana Lonergan filed an appearance for Jacobs and MQF in the underlying action. He filed an answer that denied the allegation of the complaint generally and a special defense effectively alleging that McKernan and Fazzano had violated their contract by failing to pay Criares' fee in advance of his testimony. On May 4, 1993, Lonergan moved to withdraw as attorney for Jacobs and MQF "for the reason that said defendants have advised the undersigned counsel [Lonergan] that they no longer wish to defend [the underlying action]." Thereafter, Lonergan withdrew from the case. On May 17, 1993, Jacobs filed a pro se appearance for the defendants Barry Jacobs and MQF[4] "in lieu of the appearance of 'Dana P. Lonergan.' " On this pro se appearance, Jacobs gave his "mailing address" as "112 Elden Street, Suite K, Herndon, VA. 22070."

On April 19, 1994, a pretrial hearing in the underlying action was held in Hartford before Judge Douglass B. Wright. Present at that pretrial were attorney Stephen F. McEleney, who appeared for the plaintiffs, and Criares, who appeared for himself. Jacobs was not present.[5] McEleney called from the courthouse a number he had for MQF[6] and he eventually got Jacobs on the telephone.

The trial court found the following facts concerning McEleney's telephone conversation with Jacobs at that time: "Jacobs said he had moved his office from Virginia

---

[4] We treat this as a pro se appearance for Barry Jacobs only.

[5] MQF did not appear at that time.

[6] Apparently, McEleney called a toll free Herndon, Virginia, telephone number he had obtained from the letterhead of MQF, which he had in his possession.

to Route 2, Box 642E, Summerland Key, Florida, 33042, and had not received the pretrial notice from the court. Attorney McEleney told Jacobs that it was his responsibility to notify the court of his change of address, that a default would enter against him and that he should proceed from there. McEleney also said he would inform a court clerk why Jacobs was not there but did not assure Jacobs that the clerk would enter his new address on the court file."[7]

On May 16, 1994, McEleney claimed the case for a hearing in damages. He sent that claim[8] to Jacobs' address in Herndon, Virginia, which Jacobs had set out in his pro se appearance on file. McEleney thought that he was "obligated to send [the hearing in damages claims slip] to the address on Jacobs' appearance, filed in court . . . rather than to an address given to me [McEleney] over the telephone." The court also sent notice of the date of the hearing in damages to Jacobs' Virginia address. Jacobs had not amended his pro se appearance to reflect his new address and he did not receive notice of the hearing in damages.

On July 8, 1994, the hearing in damages was held before Judge Norris O'Neill. A judgment was entered against Jacobs and MQF in the amount of $320,000 plus attorney's fees in the amount of $16,000. A judgment was also entered against Criares in the amount of $2000 by agreement.

Jacobs first learned of the judgment against him in August, 1995, when Fazzano and McKernan sought to attach his assets and to garnish his income. Jacobs, however, did not immediately seek to open the Connecticut judgment. He did, however, contact the Florida

---

[7] A default also was entered against MQF.

[8] McEleney sent the claim for the hearing in damages "first class mail, regular first-class mail." His practice, in May 1994, was to send pleadings to the address that was on the appearance that was on file.

attorney who had handled his chapter 7 bankruptcy, which he had filed in February, 1992,[9] in the United States District Court for the Southern District of Florida to seek to open that bankruptcy so as to include the Connecticut judgment against him and to have that debt discharged. Jacobs' bankruptcy attorney in Florida did file a petition in the Florida bankruptcy court seeking to have the earlier chapter 7 discharge, which he had obtained, amended to cover this Connecticut judgment. Jacobs' petition was denied by the bankruptcy court in Florida in April, 1996. Jacobs then contacted Lonergan, and the present action to set aside the Connecticut judgment and for a new trial was instituted by Jacobs in May, 1996.

In its decision, the trial court found that Jacobs had established that he did not receive actual notice of the hearing in damages, which resulted in the judgment against him, and also that he had a just defense. That court, however, found that Jacobs' not receiving actual notice was his own fault. It went on to find that Jacobs filed his pro se appearance with his Virginia address and that when he moved to Florida several months later, he did not inform the court of his new address. Moreover, the trial court continued, "even after [Jacobs] was told by attorney McEleney over the phone on the date of the pretrial that a default was likely to enter against him, [Jacobs] did nothing to protect himself." The trial court stated further that "[n]or should [Jacobs] have relied upon attorney McEleney to inform the court of his Florida address."[10] Although acknowledging that

---

[9] In February, 1992, the Connecticut action brought in 1990 by McKernan and Fazzano against Jacobs and MQF remained pending.

[10] The trial court said at this point that: "Clearly, Jacobs had little interest in the outcome of the case because he had another agenda. He explicitly told his attorney that he 'no longer wished to defend this matter.' Although at trial Jacobs put a different spin on those words, the court does not believe him, and infers Jacobs was firing his attorney because he did not want to pay him any longer. His intention was to file for bankruptcy, which he did a few months later. However, he did not include the Fazzano-McKernan lawsuit, then pending, in his list of claims. Upon learning of the judgment

Jacobs had established "two of [the] criteria" of § 52-270, i.e., the lack of actual notice and a just defense, the court said that "[Jacobs] still is not entitled to the relief afforded by the statute because of his own negligence and deliberate disregard for any responsibility he had as a defendant in the Fazzano case. *In effect, he thumbed his nose at this court and acted as if he were immune from the exercise of its powers.*" (Emphasis added.)

The trial court, however, then noted that there was a third "criterion" under § 52-270, that of "other reasonable cause." Citing *Wetzel* v. *Thorne*, 202 Conn. 561, 565, 522 A.2d 288 (1987), it opined that the basic test of "reasonable cause" was "whether or not the litigant had been deprived of a fair opportunity to be heard and that an injustice will occur if a new trial is not allowed," and, quoting *Black* v. *Universal C.I.T. Credit Corp.*, 150 Conn. 188, 193, 187 A.2d 243 (1962), stated that " '[t]he statute [§ 52-270] . . . applies only "when no other remedy is adequate" and when in equity and good conscience relief against a judgment should be granted.' " The trial court then decided that the circumstance of this case did not invoke equity and good conscience. Pointing out that McEleney had told a clerk of the court of Jacobs' Florida address on the day that he learned of it from Jacobs, the trial court indicated that "[w]hile the clerk's office may not be permitted to change addresses on notices of appearance without a writing, the clerk should have made some notification in the computer that might have directed further court notices to both addresses." It also said that "[l]ikewise, while attorney McEleney was within the rules in sending the

entered against him, his first reaction was not to move to set it aside or bring a [General Statutes] § 52-270 proceeding, but applied in the bankruptcy court to have the judgment included in the debts discharged. Only when this application was denied, and over a year after he knew of the judgment, did he initiate this § 52-270 action."

claim for the hearing in damages to Jacobs' address on his pro se appearance, fairness and common sense required he also send it to Jacobs' new Florida address. His failure to do so gives rise to the inference that he contributed to notice not being received by Jacobs of the hearing in which the judgment of $336,000 was awarded and to Jacobs not having the opportunity to interpose his defense." The trial court then concluded that "equity and good conscience require that, pursuant to § 52-270, the judgment in the underlying action be set aside as to Jacobs only and he be granted a new trial."

McKernan and Fazzano now claim that the trial court acted improperly in granting Jacobs' petition for a new trial and in denying their motion in arrest of judgment. Specifically, they claim that the trial court's conclusion that reasonable cause existed pursuant to § 52-270 to justify setting aside the underlying judgment and granting a new trial involved the misapplication of relevant law. In addition, they claim that the trial court's conclusion that Jacobs did not have a reasonable opportunity to interpose a defense and that McEleney was required to mail the plaintiff notice of the claim of the hearing in damages to an address not set out in Jacobs' pro se appearance are inconsistent with the subordinate facts which it found. We reverse the judgment of the trial court.

"A petition for a new trial under § 52-270 is a proceeding essentially equitable in nature. . . . It is authorized, and its scope is limited, by the terms of the statute." (Citations omitted.) *Black* v. *Universal C.I.T. Credit Corp.*, supra, 150 Conn. 192; see *Bleidner* v. *Searles*, 19 Conn. App. 76, 78, 561 A.2d 954 (1989). " 'The salutary purpose of the statute is that if a party has a meritorious defense and has been deprived of reasonable opportunity to present it, he ought to be permitted to make it upon another trial.' *Bellonio* v. *Thomas Mortgage Co.*, 111 Conn. 103, 105, 149 A. 218 [1930].' " *Krooner* v.

*State*, 137 Conn. 58, 60, 75 A.2d 51 (1950); *E. M. Loew's Enterprises, Inc.* v. *Surabian*, 146 Conn. 608, 612, 153 A.2d 463 (1959). "General Statutes § 52-270 sets forth the limited circumstances in which a new trial will be granted. The petitioner [for a new trial] has the burden of proving by a preponderance of the evidence that he is entitled to a new trial on the grounds claimed. *Johnson* v. *Henry*, 38 Conn. Sup. 718, 719–20, 461 A.2d 1001, cert. denied, 464 U.S. 1011, 104 S. Ct. 533, 78 L. Ed. 2d 714 (1983)." *Bleidner* v. *Searles*, supra, 78. "A petition for a new trial [under § 52-270] is addressed to the discretion of the trial court and will never be granted except upon substantial grounds. As the discretion which the court is called upon to exercise is not an absolute but a legal one, we will upon appeal set aside its action when it appears that there was a misconception on its part as to the limits of its power, that there was error in the proceedings preliminary to the exercise of its discretion, or that there was clear abuse in the exercise of its discretion. . . .' *E. M. Loew's Enterprises, Inc.* v. *Surabian*, [supra, 610]." *Kubeck* v. *Foremost Foods Co.*, 190 Conn. 667, 669–70, 461 A.2d 1380 (1983). In determining whether there has been such an abuse of discretion, as McKernan and Fazzano claim, an appellate court must make every reasonable presumption in favor of the correctness of the trial court's exercise of its discretion. *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 809, 695 A.2d 1010 (1997); *E. M. Loew's Enterprises, Inc.* v. *Surabian*, supra, 610. "Although General Statutes § 52-270 permits the court to grant a new trial upon proof of reasonable cause, the circumstances in which reasonable cause may be found are limited. *Wetzel* v. *Thorne*, 202 Conn. 561, 565, 522 A.2d 288 (1987). The basic test of reasonable cause is whether a litigant, *despite the exercise of due diligence,* has been deprived of a fair opportunity to have a case heard on appeal. . . . A new trial may be granted

to prevent injustice in cases where the usual remedy by appeal does not lie or where, if there is an adequate remedy by appeal, the party has been prevented from pursuing it by fraud, mistake or accident. *Krooner* v. *State*, [supra, 60]." (Emphasis added; internal quotation marks omitted.) *Bleidner* v. *Searles*, supra, 78–79; see *Hryniewicz* v. *Wilson*, 51 Conn. App. 440, 445, 722 A.2d 288 (1999).

"Due diligence is a necessary condition to success in prosecuting a petition for a new trial." *Crook* v. *Clark*, 124 Conn. 317, 318, 199 A. 428 (1938). Under § 52-270 "the exercise of due diligence is a condition precedent to a finding of reasonable cause." *Hryniewicz* v. *Wilson*, supra, 51 Conn. App. 446. " 'Reasonable' is a relative term which varies in the context in which it is used, and its meaning may be affected by the facts of the particular controversy. . . . It is also synonymous with '[e]quitable, fair, just.' " (Citation omitted.) *E. M. Loew's Enterprises, Inc.* v. *Surabian*, supra, 146 Conn. 612. "[Section 52-270] does not furnish a substitute for, nor an alternative to, an ordinary appeal, but applies only 'when no other remedy is adequate' and when in equity and good conscience relief against a judgment should be granted." *Black* v. *Universal C.I.T. Credit Corp.*, supra, 150 Conn. 193; *Krooner* v. *State*, supra, 137 Conn. 60.

In our analysis, we turn initially to the trial court's determination that although Jacobs had established two of the criteria of § 52-270, namely, the lack of actual notice and the existence of a just defense, it pointed out that Jacobs was, nevertheless, not entitled to a new trial because of his own "negligence" and his "deliberate disregard" for any responsibility he had as a defendant in the underlying action. Yet, the trial court, referring to the "third criteria" of § 52-270, namely, "other reasonable cause," decided that "equity and good conscience" warranted a new trial. In ordering a new trial, it decided

that while the clerk's office "may not be permitted" to change addresses on appearances without a writing, the clerk "*should have made* some notification in the computer that might have directed further court notices [to both addresses.]" (Emphasis added.) It also decided that while McEleney "was within the rules" in sending the claim for the hearing in damages to Jacobs' Virginia address listed on his pro se appearance, "fairness and common sense" required that he also send it to Jacobs' new Florida address and that that "failure," on McEleney's part, gave rise to the inference that he "contributed" to Jacobs' not only not receiving notice of the hearing in which the judgment was awarded but also to Jacobs' not having the opportunity to present his defense. Thus, concluded the trial court, equity and good conscience required a new trial. We do not agree and find that the trial court clearly abused its discretion in ordering a new trial under § 52-270.

Although the trial court found that Jacobs did not receive actual notice and was deprived of the opportunity to present his valid defense, it then inconsistently found that he was not entitled to relief because of his negligence and "deliberate disregard" for any responsibility he has as a defendant in the underlying action, but was entitled to relief under the "other reasonable cause" criterion, folding in its invocation to equity and good conscience reasoning. This conclusion totally overlooks the requisite that the party seeking the new trial and not the other party or his attorney in the underlying action, is required to exercise due diligence as a condition precedent to obtaining relief under § 52-270. "Due diligence does not require omniscience. Due diligence means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *Kubeck* v. *Foremost Foods Co.*, supra, 190 Conn. 672. Jacobs, a pro se plaintiff, was on notice, after speaking to McEleney, that there would probably be further pro-

ceedings on the underlying action, and yet he did noth-
ing to inform the clerk's office of his Florida address.
"Although we allow pro se litigants some latitude, the
right of self-representation provides no attendant
license not to comply with relevant rules of procedural
. . . law." *Zanoni* v. *Hudon*, 42 Conn. App. 70, 77, 678
A.2d 12 (1996). His was the duty to exercise due dili-
gence; that duty was not in any part upon McEleney or
his client.[11] Moreover, the case law that the demonstra-
tion of due diligence rests on the petitioner for a new
trial, applies to entitlement to that relief under the
whole statute, including the "other reasonable cause"
provision.

Jacobs cannot seriously question the finding that he
was negligent. After filing his pro se appearance, he
never filed any additional documents with or inquired
at all of the Hartford Superior Court. Jacobs claims that
he always wanted the opportunity to try the case. He
attempted at trial to gainsay the statement in his coun-
sel's motion to withdraw of May 4, 1993, in the underly-
ing action that "[Jacobs and MQF] no longer wish to
defend this matter" as an error. Jacobs maintained that
the motion should have read that "[Jacobs and MQF]
no longer wish you [the withdrawing counsel] to defend
this matter."[12] Yet, Jacobs did not consult or retain
Connecticut counsel until May, 1996. Jacobs, in seeking
relief from the Connecticut judgment, deliberately
ignored this jurisdiction and sought to open his closed
bankruptcy action in the federal court in Florida for
the purpose of including, and to be discharged of, the

---

[11] The trial court, after finding Jacobs negligent and in "deliberate disre-
gard" of his responsibility as a defendant in the underlying action, said
that McEleney's "failure" to send the notice to Jacobs' Florida address
"contributed" to the notice not being received by Jacobs. Such a formulation
clearly suggests McEleney was under some duty which he failed to carry
out. Insofar as it implies some "due diligence" had to be exercised by
McEleney, it lacks merit.

[12] The trial court's memorandum clearly indicated that it did not credit this.

Connecticut judgment.[13] That effort proved unsuccessful.

The burden of showing due diligence rested solely and throughout on the plaintiff. The trial court enigmatically found that McEleney was "within the rules" in sending the notice of hearing to Jacobs' address on his pro se appearance and yet it noted that McEleney's failure to send it to Jacobs' Florida address "contributed" to Jacobs' not receiving notice. Jacobs argues that a purpose of our rules of practice insofar as pleadings are concerned is to afford notice of various stages of the proceedings in an action and that he should have been given notice at his Florida address of the hearing in damages. He gives, however, no authority, rule or statute for that claim. Furthermore, Jacobs cannot and does not attack the finding that McEleney was "within the rules" in not sending notice to the Florida address.[14] More to the point, the trial court itself cites no rule or authority of any sort that required McEleney to forward the notice to Jacobs' Florida address nor that the clerk "should have" made some notification on his computer of the Florida address. As we have said, "[e]ither we adhere to the rules or we do not adhere to them." *Osborne* v. *Osborne*, 2 Conn. App. 635, 639, 482 A.2d 77 (1984). McEleney was "within the rules" and, in the absence of any contrary authority, we are fairly entitled to presume that the clerk acted likewise.

It is evident from what we have stated that the trial court made conclusions that were inconsistent with the

[13] It is quite clear that the trial court felt strongly about this. At the postjudgment hearing on the defendant's motion in arrest of his judgment granting Jacobs' petition for a new trial, the trial judge said: "I think my opinion makes very clear I have little sympathy for Mr. Jacobs. Dr. Jacobs, in effect, thumbed his nose at this court. Moreover, I'm absolutely clear what his agenda was: he didn't give a darn about this judgement because he was going to go to the bankruptcy court and get it wiped out through the bankruptcy court. I understand what was happening here."

[14] He offers no reasonable argument why the clerk's office should put his Florida address in its computer system.

subordinate facts found and they cannot stand. See *Delfino* v. *Vealencis*, 181 Conn. 533, 543, 436 A.2d 27 (1980); see also *Boland* v. *Catalano*, 202 Conn. 333, 337–38, 521 A.2d 142 (1987). The trial court found that Jacobs was negligent and deliberately disregarded his responsibility as a defendant in the underlying case. It also, in effect, found that he had exercised due diligence, or at the very least, so much as it felt Jacobs had to. Yet, at the same time, the trial court held that although McEleney was "within the rules" in not mailing the hearing in damages notice to Florida, his "failure" to do this "contributed" to the entry of the judgment award against Jacobs. Paradoxically, the trial court effectively imposed some duty on McEleney, without any citation of authority and in using terms sounding in negligence, i.e., "failure," which somehow "contributed" to the Jacobs judgment. In a word, there was no such duty on that attorney. Moreover, the trial court improperly implied that the proof of the exercise of due diligence is not totally on Jacobs, but at least in some part on McEleney. Such conclusions cannot stand and are themselves improper.

Despite the fact that the trial court concluded that the petitioner had not demonstrated that he was entitled to a new trial under the first two criteria, it nevertheless went on and decided that he was entitled to a new trial under the third criterion of § 52-570, that of "other reasonable cause." It did so because it concluded that the circumstances of this case did invoke equity and good conscience and satisfied the "other reasonable cause" criterion of § 52-270. We do not agree and conclude that the trial court clearly abused its discretion in granting such relief.

In coming to that conclusion, the court pointed out that the clerk "should have made" some notification on his computer that "might have directed notices to both [Jacobs' Virginia and Florida addresses.]" It also

indicated that because McEleney was already in possession of Jacobs' Florida address and although he acted "within the rules" in sending the hearing notice only to Jacobs' Virginia address, "fairness and common sense" required that he also send it to Jacobs' new Florida address. His "failure" to do so, the court went on, contributed ultimately to the judgment against Jacobs in the underlying action. The trial court does not, however, go further and discuss the circumstances of Jacobs' conduct throughout, including his failure to exercise due diligence. This must be considered, if for no other reason than that "[o]ne who seeks equity must also do equity and expect that equity will be done for all." *LaCroix* v. *LaCroix*, 189 Conn. 685, 689, 457 A.2d 1076 (1983); see *Lesser* v. *Lesser*, 134 Conn. 418, 426, 58 A.2d 512 (1948). Cast in more earthy terms, " '[e]quity is a two-way street and must be recognized as such wherever the court employs equity to resolve a dispute. *Jerry Harmon Motors, Inc.* v. *Heth*, 316 N.W.2d 324, 329 (N.D. 1982).' " *Hackett* v. *Hackett*, 42 Conn. Sup. 36, 53, 598 A.2d 1112, aff'd, 26 Conn. App. 149, 598 A.2d 1103 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992).

"The term 'equity' denotes the spirit and habit of fairness, justness and right dealing which would regulate the intercourse [between individuals]. Black's Law Dictionary (6th Ed. 1990)." *Krasowski* v. *Fantarella*, 51 Conn. App. 186, 199, 720 A.2d 1123, cert. denied, 247 Conn. 961, 723 A.2d 815 (1998). The term "conscience" means "the sense of right or wrong . . . together with a feeling of obligation to do or be that which is recognized as good. . . ." Webster's Third New International Dictionary. Pomeroy indicates that, in the evolution of the law of equity, "conscience" came to mean "practically the same as 'equity.' " 2 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) §§ 57, 58. Our courts have recognized that " '[i]t is one of the fundamental principles upon which equity jurisprudence is founded, that

before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into the court with clean hands. . . . The complainant ought not to be the transgressor himself, and then complain that by chance he has been injured on account of his own wrongful misconduct . . . the equity court will not lend him its jurisdiction to right a wrong of which he himself is the author.' 1 Story, Equity Jurisprudence (14th Ed.) 98." *Boretz* v. *Segar*, 124 Conn. 320, 323, 199 A.2d 548 (1938); see *Murphy* v. *Dantowitz*, 142 Conn. 320, 326, 114 A.2d 194 (1955). The principle that "[h]e who seeks equity must do equity" is one of extensive application. See 2 J. Pomeroy, supra, § 385 et seq. We recognize that "[t]he clean hands doctrine[15] is applied not for the protection of the parties . . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice." (Citations omitted.) *Pappas* v. *Pappas*, 164 Conn. 242, 246, 320 A.2d 809 (1973). We note that when the trial court turned to the "other reasonable cause" criterion, upon which it based its decision, and invoked its "equity and good conscience" rationale, it actually referred only to two factual bases upon which to bottom that conclusion; specifically that McEleney, although he had Jacobs' Florida address since April, 1994, failed to go that route despite fairness and common sense "requir-

---

[15] In *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814, 65 S. Ct. 993, 89 L. Ed. 1381 (1945), the United States Supreme Court stated: "The guiding doctrine in this case is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be 'the abettor of inequity.' *Bein* v. *Heath*, 6 How. 228, 247 [47 U.S. 228, 12 L. Ed. 416 (1848)]."

ing" him to do so. The other circumstance was that the court clerk had Jacobs' Florida address, and, although "not permitted to change addresses on notice of appearance," *should have made* some notification in his computer that would have directed any hearing in damages claims to Jacobs' Florida address. The conclusion of the trial court that imposed, without reason or law, upon McEleney the duty of sending the hearing in damages notice to Jacobs in Florida improperly relieved Jacobs of the burden of his own negligence which the court had already found Jacobs had committed. The influence that the trial court found, arising of McEleney's so-called failure, could not properly give rise, in reason or law, to a finding that McEleney "contributed" to the judgment against Jacobs. Such improper attribution took Jacobs' obligation to exercise due diligence out of the calculus in addition to which we have said above. Our Supreme Court has also said that "[i]n determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Berry* v. *Loiseau,* 223 Conn. 786, 800, 614 A.2d 414 (1992); *Krasowski* v. *Fantarella,* supra, 51 Conn. App. 200. Moreover, such a conclusion also incorrectly applied the law. Such a conclusion cannot stand.

In like, but not identical, fashion, the trial court's finding that although the clerk was not "permitted" to change addresses on appearances but "should have made" some notification in his computer of the Florida address cannot stand. It attributes, without any basis in evidence or rule, to the clerk an undertaking that the trial court itself concedes that the clerk is not "permitted" to do. If something is not "permitted," that suggests that it is not to be done; this is resonant of the caveat. "Either we adhere to the rules or we do not adhere to them." *Osborne* v. *Osborne,* supra, 2 Conn. App. 639. Here again there appears to be lack of recogni-

tion that due diligence is the petitioner's burden and not to be shared with the opposing party.

In reviewing all the relevant circumstances in this case, we note that our Supreme Court has said in a case of equity that "[t]his is a claim in a court of equity and the conduct of the plaintiff is subject to scrutiny, since he who claims equity must do equity." *Basak* v. *Damutz*, 105 Conn. 378, 385, 135 A. 453 (1926). "Equity and good conscience" do not comport with the relief given the plaintiff below. More significantly, we conclude that the trial court clearly abused its discretion in that it did not correctly apply the law and could not reasonably have reached the conclusion that it did.

The judgment is reversed and the case is remanded with direction to render judgment denying the petition for a new trial.

In this opinion the other judges concurred.