******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE MADISON C. ET AL*
## (AC 44926)

Moll, Cradle and Clark, Js.

*Syllabus*

The respondent mother, whose parental rights as to her minor children previously had been terminated, appealed from the judgment of the trial court granting the motion to strike her petition for a new trial filed by the Commissioner of Children and Families. In her petition, the mother made allegations that she claimed constituted newly discovered evidence that, if known during the pendency of her termination trial, would have affected the outcome, specifically, that the court had approved permanency plans following the termination trial seeking to reunite the minor children with their father and that, following her release from prison after the termination trial, she had achieved a degree of personal rehabilitation sufficient to encourage the belief that she could resume a responsible position in the children's lives. The court concluded that the mother had failed to plead sufficient facts for a new trial pursuant to statute (§ 52-270). On the plaintiff's appeal, *held* that the trial court properly granted the motion to strike the petition for a new trial as it failed to state a claim on which relief could be granted: the mother's allegations in her petition did not constitute newly discovered evidence as the court's orders approving new permanency plans were entered well after the termination trial had ended and judgment had been rendered terminating the mother's parental rights and, thus, were not facts that existed at the time of her trial; moreover, the mother's allegation that she had achieved a degree of personal rehabilitation sufficient to encourage the belief that she could resume a responsible position in her children's lives also concerned events that occurred after her trial and were but a change in circumstances, as evidence in support of facts or events that did not exist or had not yet occurred at the time of trial is not and cannot be newly discovered.

Argued February 3—officially released June 8, 2022**

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters, where the petitions were withdrawn as to the respondent father; thereafter, the matter was tried to the court, *Aaron, J.*; judgments terminating the respondent mother's parental rights, from which the respondent mother appealed to this court, *Bright, C. J.*, and *Suarez and Lavery, Js.*, which affirmed the judgments; subsequently, the respondent mother filed a petition for a new trial and the court, *C. Taylor, J.*, granted the motion to strike the petition filed by the Commissioner of Children and Families and rendered judgment thereon, from which the respondent mother appealed to this court. *Affirmed.*

*Albert J. Oneto IV*, assigned counsel, for the appellant (respondent mother).

*Benjamin Abrams*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Evan O'Roark*, assistant attorney general, for the appellee (petitioner Commissioner of Children and

Families).

*Opinion*

CLARK, J. Following the termination of her parental rights as to her three children,[1] the respondent, Patricia K., filed a petition for a new trial (petition),[2] pursuant to General Statutes § 52-270.[3] In response, the Commissioner of Children and Families (commissioner) filed a motion to strike for failure to state a claim upon which relief can be granted, which the court ultimately granted and rendered judgment thereon. The respondent appeals from that judgment, claiming that the court improperly granted the motion to strike her petition because she had alleged newly discovered evidence that, if known during the pendency of her trial, likely would have altered the outcome.[4] Because the facts averred in the respondent's petition do not constitute newly discovered evidence within the meaning of § 52-270, we affirm the judgment of the trial court.

The following facts, as summarized by this court in the respondent's direct appeal from the judgments terminating her parental rights; see *In re Madison C.*, 201 Conn. App. 184, 241 A.3d 756, cert. denied, 335 Conn. 985, 242 A.3d 480 (2020); and procedural history are relevant to our resolution of this appeal. The respondent and Chester C. are the biological parents of Madison, Ryan, and Andrew. Id., 186. The Department of Children and Families (department) became involved with the family in 2013, when Madison tested positive for marijuana and methadone upon birth. Id. Ryan, too, tested positive for marijuana and methadone when he was born in 2015. Id. Both Madison and Ryan were discharged from the hospital in the care of their parents. Id. In April, 2017, the police responded to a domestic dispute at the family's home where they found drug paraphernalia. Id. The police also found that the house was in deplorable condition. Id. On May 2, 2017, Madison and Ryan were removed from their parents' care pursuant to an order of temporary custody and placed in a nonrelative foster home. Id. That day, the commissioner also filed neglect petitions as to Madison and Ryan, alleging that they were being permitted to live under conditions, circumstances, or associations injurious to their well-being. Id.

When Andrew was born in November, 2017, he tested positive for marijuana, methadone, and cocaine. Id., 187. Pursuant to an order of temporary custody, Andrew was discharged from the hospital to the care of a nonrelative foster family. Id. On November 20, 2017, the commissioner filed a neglect petition as to Andrew on the basis of predictive neglect. Id. On November 30, 2017, the court, *Hon. Barbara M. Quinn*, judge trial referee, consolidated the three neglect petitions, adjudicated the children neglected, and ordered them committed to the custody of the commissioner. Id. The court also ordered specific steps for the respondent and Chester C. Id.

On February 1, 2019, the commissioner filed petitions to terminate the parental rights of the respondent and Chester C. to each of the three children "on the grounds that the court in the prior proceeding found the children to have been neglected, and [the parents] had failed to achieve the degree of personal rehabilitation that would encourage the belief that, within a reasonable time and considering the ages and needs of the children, they could assume a responsible position in their children's lives."[5] Id.; see General Statutes § 17a-112 (j) (3) (B) (i). The court, *Aaron, J.*, tried the termination of parental rights petitions on August 5, 6, 7, and 16, 2019.[6] *In re Madison C.*, supra, 201 Conn. App. 188. On August 16, 2019, prior to the close of evidence, the commissioner withdrew the termination petitions as to Chester C.[7] Id.

The court issued a memorandum of decision on November 8, 2019, granting the petitions to terminate the respondent's parental rights to the children. Id. In the adjudicatory phase of the proceedings, the court found by clear and convincing evidence that the respondent had not and would not achieve the degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the ages and needs of all three children, she could assume a responsible position in their lives. Id., 188–89.

In the dispositional phase of the proceedings, the court made findings on the criteria set forth in § 17a-112 (k), and "noted that the respondent had not successfully taken advantage of or complied with the services provided by the department and had not shown a willingness or ability to provide a safe and nurturing environment in which she appropriately could parent the children. Additionally, the court found that there was credible evidence to suggest that the 'toxic relationship between the parents and [the] respondent's overbearing and manipulative behavior toward [Chester C.] is an impediment to [Chester C.'s] effective parenting of the children.' " Id., 189. The court rendered judgments terminating the respondent's parental rights to each of the children. The respondent appealed.

On appeal to this court, the respondent did not challenge Judge Aaron's findings that she had failed to rehabilitate, had not taken advantage of the services offered to her by the department, had not shown a willingness or ability to provide a safe and nurturing environment for the children or that her behavior toward Chester C. was an impediment to his ability to effectively parent the children. See id., 189. Rather, she claimed that the "court deprived her of her substantive due process rights as guaranteed by the fourteenth amendment to the United States constitution because termination of her parental rights was not the least restrictive means necessary to ensure the state's compelling interest in protecting the best interests of the children." Id., 189–90.

The respondent's argument that there were less restrictive alternatives to the termination of her parental rights was predicated on the commissioner's withdrawal, on the last day of trial, of the termination petitions as to Chester C., which resulted in the commissioner's filing of new permanency plans to reunify the children with Chester C., rather than to place them for adoption. Id., 191. She argued that, because there was a change of permanency plans, "alternatives to termination were appropriate because the court did not base its decision on a finding that she posed a physical threat to the safety of the children or that she would abuse her parental status in ways that could harm the children if the children were reunified with Chester C. Rather, she argue[d], the court based its decision to terminate [her parental rights] on its concern that she was 'an impediment to [the] father's effective parenting of the children.' She contend[ed] that the trial court's concerns about the potential for her to undermine Chester C.'s parenting could have been addressed through further orders limiting her guardianship, rather than by terminating her parental rights." Id. The respondent, however, acknowledged that she had not preserved this claim of constitutional error at trial; id., 190; and sought to prevail on appeal pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

This court concluded that the record was inadequate to review the respondent's unpreserved constitutional claim and affirmed the judgments of the trial court. *In re Madison C.*, supra, 201 Conn. App. 196; see also *State* v. *Golding*, supra, 213 Conn. 239 (party can prevail on constitutional claim that was not preserved at trial only if record is adequate to review alleged error). In reaching this conclusion, this court noted that the respondent had not proposed any alternative permanency plans at trial that would have addressed the trial court's concerns while allowing her to maintain her parental rights. *In re Madison C.*, supra, 196. "[T]he only possible reference to an alternative plan came, not during the presentation of evidence, but during closing arguments when the respondent's counsel stated: 'If your plan is to reunify with the father and not free these children for adoption, I submit that my client's parental rights should not be terminated in this matter.' " Id., 194. In the absence of alternative proposals, the trial court had no factual predicates on which to make a finding as to whether there were narrower means, other than termination, available to protect the children's welfare and afford them permanency. Id., 194–96. Accordingly, this court concluded that the respondent's failure to raise this claim at trial, file a motion to reargue or seek an articulation as to whether the court had considered alternatives to terminating her parental rights "left the record devoid of evidence and findings necessary to review her constitutional claim." Id., 194.

On January 21, 2021, the respondent filed the instant petition for a new termination of parental rights trial pursuant to § 52-270. She alleged in relevant part that "[o]n or about August 16, 2019, the . . . commissioner withdrew the petitions to terminate [Chester C.'s] parental rights, but proceeded with a trial to terminate the [respondent's] parental rights. . . . [P]ursuant to the fourteenth amendment to the United States constitution, the . . . commissioner was constitutionally prohibited from obtaining judgments of the Superior Court terminating [her] parental rights absent a compelling governmental interest." The respondent further averred that termination of her parental rights "was or may not have been necessary" in one or more of the following ways: "to secure for the children a permanent placement as required by General Statutes §§ 17a-110, 17a-110a, and 17a-11a . . . [or] to protect the children's essential health and safety because less drastic measures were available to the . . . commissioner . . . ."[8]

The respondent asserted as the ground for a new trial that she had "discovered material evidence in her favor that she could not have reasonably discovered before or during trial . . . ." The newly discovered evidence she alleged in support of her claim were the permanency plans seeking to reunify Madison, Ryan, and Andrew with Chester C., which the court, *C. Taylor, J.*, approved several months after the termination of parental rights trial had concluded.[9] Additionally, the respondent alleged that there was newly discovered evidence demonstrating that she had "achieved a degree of personal rehabilitation sufficient to encourage the belief that she could resume a responsible position in her children's lives." Specifically, the respondent alleged that, after her release from prison on June 11, 2020; see footnotes 5 and 6 of this opinion; she "found gainful employment, completed parenting education, graduated from intensive outpatient substance abuse treatment . . . engaged in mental health counseling . . . [and] did not interfere with [Chester C.'s] effective parenting of the children . . . ."

On February 23, 2021, the commissioner filed a motion to strike the petition, arguing that the petition did not allege "newly discovered evidence" within the meaning of § 52-270 because it alleged events that occurred *after* the conclusion of the termination of parental rights trial. On March 15, 2021, the respondent filed a memorandum in opposition to the motion to strike. Judge Taylor held a hearing on the motion to strike on May 24, 2021,[10] and summarily granted the motion on the same date. The court issued a written articulation of its decision on July 15, 2021.

In its articulation, the court first addressed the respondent's claim that, when the commissioner withdrew the termination petitions against Chester C., she gained a constitutional defense to the termination petitions against her because the children were no longer going

to be adopted, and there was no compelling state need to terminate her parental rights. The court noted that the respondent had pursued this claim on direct appeal and that this court had concluded that the respondent had failed to provide an adequate record for review. As to the respondent's allegation that she was entitled to a new trial because she had achieved a greater degree of rehabilitation than the court was led to believe at the trial on the termination petitions, the court observed that she could have made such arguments in her appeal from the judgments terminating her parental rights.

In sum, the court concluded that the respondent's petition had failed to plead sufficient facts to support a petition for a new trial and granted the motion to strike, explaining that, "[i]f an allegation as to a change of circumstances *after* trial constituted a sufficient basis to grant a new trial on a termination of parental rights petition, a parent could prevent a child from achieving permanency and stability indefinitely." (Emphasis added.) The respondent subsequently appealed to this court.[11]

On appeal, the respondent claims that the trial court improperly granted the motion to strike her petition because she alleged facts sufficient to state a claim for a new trial pursuant to § 52-270 on the ground of newly discovered evidence. Specifically, she argues that her petition alleged that, following the conclusion of her trial, she discovered new evidence demonstrating that it was unnecessary, as a matter of due process, to terminate her parental rights because *after her parental rights had been terminated* (1) the trial court approved permanency plans for the children calling for reunification with Chester C. and (2) she had rehabilitated to a point where she could safely assume a responsible position in the lives of her children, contrary to what Judge Aaron had been led to believe at trial. The commissioner argues that, for purposes of § 52-270, newly discovered evidence must be evidence of facts that existed at the time of the original trial and, therefore, the court properly granted the motion to strike the respondent's petition. We agree with the commissioner.

We begin our discussion by setting forth our standard of review. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on [a motion to strike] is plenary." (Internal quotation marks omitted.) *Hirsch* v. *Woermer*, 184 Conn. App. 583, 587, 195 A.3d 1182, cert. denied, 330 Conn. 938, 195 A.3d 384 (2018). "We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Thomas* v. *State*,

130 Conn. App. 533, 543, 24 A.3d 12, cert. denied, 302 Conn. 945, 30 A.3d 2 (2011). "It is fundamental that in determining the sufficiency of a complaint challenged by a [party's] motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 350, 71 A.3d 480 (2013). A motion to strike, however, is properly granted by the trial court "if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003).

A trial court's authority to grant a petition for a new trial is set forth in § 52-270 (a), which provides in relevant part that "[t]he Superior Court may grant a new trial of any action that may come before it, for . . . the discovery of new evidence . . . ." What constitutes newly discovered evidence is not defined by statute, but "[t]he law on the subject of new trials for [the discovery of new evidence] is well settled in this state by a long and uniform course of judicial decisions . . . ." *Hamlin* v. *State*, 48 Conn. 92, 93 (1880). Our appellate case law establishes that "[a] party is entitled to a new trial on the ground of newly discovered evidence if such evidence is, in fact, newly discovered, will be material to the issue on a new trial, could not have been discovered and produced, on the trial which was had, by the exercise of due diligence, is not merely cumulative and is likely to produce a different result." (Internal quotation marks omitted.) *Johnson* v. *Raffy's Café I, LLC*, 173 Conn. App. 193, 211, 163 A.3d 672 (2017); see also *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987), as further refined in *Shabazz* v. *State*, 259 Conn. 811, 827–28, 792 A.2d 797 (2002); *Hamlin* v. *State*, supra, 93–94. "This strict standard is meant to effectuate the underlying equitable principle that once a judgment is rendered it is to be considered final, and should not be disturbed by posttrial motions except for a compelling reason." (Internal quotation marks omitted.) *Asherman* v. *State*, supra, 434.

It is well established that the granting of a new trial "is not intended to reach errors available on appeal of which the party should have been aware at the time when an appeal might have been taken. . . . It is an additional safeguard to prevent injustice in cases where the usual remedy by appeal does not lie or where, if there is an adequate remedy by appeal, the party has been prevented from pursuing it by fraud, mistake or accident. . . . [Section 52-270] does not furnish a substitute for, nor an alternative to, an ordinary appeal, but applies only when no other remedy is adequate and when in equity and good conscience relief against a judgment should be granted." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *LaBow* v. *LaBow*, 69 Conn. App. 760, 766, 796 A.2d 592, cert.

denied, 261 Conn. 903, 802 A.2d 853 (2002). "[T]he causes for which new trials may be granted . . . are only such as show that the parties did not have a fair and full hearing at the first trial . . . ." (Internal quotation marks omitted.) *In re Jonathan M.*, 255 Conn. 208, 239, 764 A.2d 739 (2001).

I

We first consider the respondent's allegation that, several months after the conclusion of the trial on the petition to terminate her parental rights, the court entered orders approving new permanency plans for the children, which called for reunification with Chester C. Because those orders were entered well after the trial had ended and judgment had been rendered terminating the respondent's parental rights, we conclude that the respondent has not alleged the existence of newly discovered evidence within the meaning of § 52-270. As a result, the court properly concluded that this allegation does not state a claim for a new trial on the basis of newly discovered evidence.

Our case law makes clear that a party seeking a new trial under § 52-270 on the basis of the discovery of new evidence must allege evidence of facts or events that existed at the time of the original proceeding. See *Lozada* v. *Warden*, 24 Conn. App. 723, 725, 591 A.2d 1272 (1991) (evidence of first habeas counsel's ineffectiveness is not newly discovered evidence sufficient to support petition for new trial because such evidence did not exist, but rather was generated, at time of first habeas trial), aff'd, 223 Conn. 834, 613 A.2d 818 (1992); *Wendt* v. *Wendt*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-99-0172598-S (March 2, 2001) (newly discovered evidence must be based on facts in existence at trial); *State* v. *Goodwin*, 3 Conn. Cir. 386, 390–91, 215 A.2d 913 (evidence that is inadmissible at time of trial because it did not exist at time of trial is not newly discovered evidence), cert. denied, 153 Conn. 725, 213 A.2d 525 (1965); see also Black's Law Dictionary (11th Ed. 2019) p. 701 ("newly discovered evidence" is evidence in existence at time of trial, which then unknown to party, is later discovered). Evidence in support of facts or events that did not exist or had not yet occurred at the time of trial, is not, and cannot be, newly discovered.

Our conclusion that a petition for a new trial on the ground of newly discovered evidence must be based on evidence offered to prove facts that existed at the time of the original trial is consistent with this state's well settled standard governing the merits of a petition for a new trial. In Connecticut, a party seeking to prevail on a petition for a new trial on the ground of newly discovered evidence must demonstrate that the evidence "could not have been discovered and produced [in] the former trial by the exercise of due diligence." (Internal quotation marks omitted.) *Skakel* v. *State*, 295

Conn. 447, 507, 991 A.2d 414 (2010). "[I]f the new evidence relied upon could have been known with reasonable diligence, a new trial will not be granted." (Internal quotation marks omitted.) Id., 506. The requirement that a party must have exercised due diligence to discover what could have been known at trial is impossible to square with a definition of newly discovered evidence that includes evidence of facts that did not exist at the time of trial. A party simply cannot be expected to diligently pursue evidence establishing facts that did not exist at trial. See *Wendt* v. *Wendt*, supra, Superior Court, Docket No. FA-99-0172598-S ("[b]y definition, evidence of posttrial events can *never* be discovered at the time of trial, regardless of the degree of diligence exercised" (emphasis in original)).

The respondent nevertheless contends that our Supreme Court's decisions in *Kubeck* v. *Foremost Foods Co.*, 190 Conn. 667, 461 A.2d 1380 (1983), and *Taborsky* v. *State*, 142 Conn. 619, 116 A.2d 433 (1955), stand for the proposition that a trial court may grant a petition for a new trial even though the alleged newly discovered evidence seeks to establish facts or events that occurred or came into existence after a trial has ended. We are not persuaded.

In *Kubeck*, the plaintiff commenced a personal injury action after sustaining injuries in a motor vehicle crash. *Kubeck* v. *Foremost Foods Co.*, supra, 190 Conn. 668. Because the court found in favor of the plaintiff as to liability on summary judgment, only the issue of damages was tried to the jury, which awarded the plaintiff $10,000. Id. The plaintiff later filed a petition for a new trial in light of newly discovered evidence indicating that she had suffered a disc injury in the motor vehicle collision and that, therefore, the original judgment was inadequate and a new trial would produce a different result. Id., 668–71. The trial court denied her petition on the ground that she had failed to show that the new evidence could not have been discovered with due diligence prior to the first trial. Id., 671. On appeal, our Supreme Court reversed the court's judgment, concluding that the court had abused its discretion because, in finding that the plaintiff had failed to exercise due diligence, it had erroneously imputed to the plaintiff the failure of her doctors to discover the injury. Id., 672–74.

*Kubeck* did not hold that a petition for a new trial "need not be predicated on facts existing at the time of trial." Nothing in *Kubeck* suggests that the newly discovered medical condition at issue in that case did not exist at the time of trial. On the contrary, our Supreme Court noted that the trial court had found that the disc injury was causally related to the motor vehicle crash and that the trial court's conclusion that the plaintiff had failed to exercise due diligence was supportable only if the failure of the plaintiff's doctors to discover the disc injury prior to trial was imputed to the plaintiff. Id.,

672–73. In other words, the analysis in *Kubeck* presumed that the disc injury existed at the time of trial but was unknown to the plaintiff.

Our Supreme Court's decision in *Taborsky* is no more helpful to the respondent. In that case, the court reversed the judgment of the trial court, which had denied a petition for a new criminal trial on the ground of newly discovered evidence bearing on the competency of a key state's witness in a murder trial. *Taborsky* v. *State*, supra, 142 Conn. 621, 624–29, 634. In concluding that the trial court had erred in denying the petition, our Supreme Court noted that there was evidence at the hearing on the petition establishing that the witness' mental disability, the extent of which was not known to the petitioner until shortly after trial, had existed prior to and during the pendency of the petitioner's trial and was therefore evidence likely to bring about a different result in a new trial. Id., 628–33. In considering whether evidence of the witness' competency would be admissible and relevant to the issue of the witness' credibility in a new trial, in the event that the witness was unavailable to testify and transcripts of the witness' prior testimony were offered; id., 624; the court observed that, "since a condition of mental [disability] is always a more or less continuous one, it would be proper, *in order to ascertain the fact of its existence at a certain time*, to consider its existence at a subsequent time." (Emphasis added.) Id., 629–30. Furthermore, although the court acknowledged that a new trial ordinarily will not be granted on the ground of impeachment evidence, it concluded that the impeachment evidence in *Taborsky* went "to the very sanity of the key witness, without whose evidence the accused could not have been convicted." Id., 632.

Thus, the respondent's reliance on *Taborsky* as standing for the proposition that newly discovered evidence need not be predicated on facts existing at the time of trial is misplaced. The decision makes clear that the petitioner in that case was granted a new trial because the discovery of new evidence bearing on the competency of a crucial state's witness called into question the veracity of the witness' testimony against the petitioner at the time of the original trial. The petitioner in that case did not merely allege a change in the witness' competency subsequent to the trial and unrelated to the veracity of that witness at the time of the original trial.

In sum, our case law, including the authorities relied upon by the respondent, plainly establish that, for purposes of seeking a new trial on the ground of newly discovered evidence, the evidence must be offered to prove facts that existed or events that occurred at the time of the original proceeding. This requirement helps to ensure that a petition for a new trial on the basis of newly discovered evidence is not used to undermine the finality of judgments. As our appellate courts have

observed, the standard a party must satisfy to obtain a new trial is "strict and is meant to effectuate the underlying equitable principle that once a judgment is rendered it is to be considered final, and should not be disturbed by posttrial [proceedings] except for a compelling reason." (Internal quotation marks omitted.) *Jones* v. *State*, 328 Conn. 84, 92–93, 177 A.3d 534 (2018); see also *Carter* v. *State*, 159 Conn. App. 209, 222–23, 122 A.3d 720, cert. denied, 319 Conn. 930, 125 A.3d 204 (2015). "There must be an end of litigation, and for that reason the rules governing new trials should be strictly adhered to." (Internal quotation marks omitted.) *Gonirenki* v. *American Steel & Wire Co.*, 106 Conn. 1, 12, 137 A. 26 (1927); see also *Lancaster* v. *Bank of New York*, 147 Conn. 566, 578, 164 A.2d 392 (1960) (without rule limiting right to new trial on basis of new evidence merely affecting witness's credibility, "there might never be an end to litigation" (internal quotation marks omitted)). "Finality of litigation is essential so that parties may rely on judgments in ordering their private affairs and so that the moral force of court judgments will not be undermined. The law favors finality of judgments . . . ." (Internal quotation marks omitted.) *U.S. Bank, National Assn.* v. *Mamudi*, 197 Conn. App. 31, 48, 231 A.3d 297, cert. denied, 335 Conn 921, 231 A.3d 1169 (2020).

This principle of law is especially important in child protection matters. As Judge Taylor aptly observed, if a parent's allegation of a change in circumstances after a judgment is rendered is a sufficient basis for a new trial, a parent could prevent a child from achieving permanency and stability indefinitely. "Time is of the essence in child custody cases. . . . This furthers the express public policy of this state to provide all of its children a safe, stable nurturing environment. . . . When the child whose interest is to be protected is very young, delay in adjudication imposes a particularly serious cost on governmental functioning." (Citations omitted; internal quotation marks omitted.) *In re Juvenile Appeal*, 187 Conn. 431, 439–40, 446 A.2d 808 (1982); see also *In re Davonta V.*, 285 Conn. 483, 494, 940 A.2d 733 (2008) (our appellate cases have "noted consistently the importance of permanency in children's lives" (internal quotation marks omitted)). "There is little that can be as detrimental to a child's sound development as uncertainty . . . especially when such uncertainty is prolonged." *Lehman* v. *Lycoming County Children's Services Agency*, 458 U.S. 502, 513–14, 102 S. Ct. 3231, 73 L. Ed. 2d 928 (1982). Thus, a "[s]tate's interest in finality is unusually strong" with respect to disputes involving the termination of parental rights. Id., 513.

Although the respondent acknowledges that the law favors finality of litigation, she argues that "the principle must yield on occasion when it appears that its application will result in a miscarriage of justice" and that the circumstances alleged in her petition warrant the

exercise of the trial court's equitable powers.[12] We acknowledge that "[a] petition for a new trial under § 52-270 is a proceeding essentially equitable in nature"; (internal quotation marks omitted) *Jacobs* v. *Fazzano*, 59 Conn. App. 716, 722, 757 A.2d 1215 (2000); and "provides a critical procedural mechanism for remedying an injustice." (Internal quotation marks omitted.) *Mitchell* v. *State*, 338 Conn. 66, 74, 257 A.3d 259 (2021). That said, the grounds that may be asserted to support a petition for a new trial are circumscribed by statute. See *Black* v. *Universal C.I.T. Credit Corp.*, 150 Conn. 188, 192, 187 A.2d 243 (1962) (petition for new trial "is authorized, and its scope is limited, by the terms of the statute"). The party seeking a new trial "has the burden of proving by a preponderance of the evidence that [he or she] is entitled to a new trial on the grounds claimed." (Internal quotation marks omitted.) *Jacobs* v. *Fazzano*, supra, 723. Accordingly, the fundamental question before the trial court on the commissioner's motion to strike in this appeal was whether the facts alleged in the respondent's petition stated a claim for a new trial pursuant to § 52-270. Because the court's orders approving new permanency plans did not occur until after the respondent's trial, they were not facts in existence at the time of her trial and, consequently, did not constitute newly discovered evidence. These allegations thus failed to satisfy the threshold requirement of stating a claim upon which equitable relief may be granted.

II

For the same reasons discussed in part I of this opinion, the respondent's claim that she is entitled to a new trial for the discovery of new evidence establishing that she rehabilitated to a greater extent than what the trial court was led to believe at her trial also fails. In her petition for a new trial, the respondent alleged that, following her release from prison on June 11, 2020, which was approximately seven months after the court terminated her parental rights, she found gainful employment, graduated from intensive outpatient substance abuse treatment, finished relapse prevention therapy, and engaged in counseling to address her mental health issues. She also alleged that she had not interfered with Chester C.'s effective parenting of the children and that she had "achieved a degree of personal rehabilitation sufficient to encourage the belief that she could resume a responsible position in her children's lives." On appeal, she argues that the court improperly struck her petition as to this claim because it alleges newly discovered evidence that establishes that the termination of her parental rights was not necessary to achieve a compelling government interest and, therefore, is evidence likely to produce a different result at a new trial.

Like the respondent's allegations relating to the orders approving new permanency plans with respect to Chester C., these allegations concern events that occurred

*after* the respondent's trial, which concluded on August 16, 2019. If anything, these allegations are but a change in circumstances and, consequently, are not legally sufficient to support a petition for a new trial based on newly discovered evidence under § 52-270.

For the foregoing reasons, we conclude that the court properly granted the motion to strike the respondent's petition for a new trial as it failed to state a claim on which relief could be granted.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** June 8, 2022, the date this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] See *In re Madison C.*, 201 Conn. App. 184, 241 A.3d 756, cert. denied, 335 Conn. 985, 242 A.3d 480 (2020).

[2] The respondent filed a consolidated petition for a new trial with respect to the judgments terminating her parental rights as to the three minor children.

[3] General Statutes § 52-270 (a) provides: "The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the Superior Court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action."

[4] The attorneys for all three minor children, the guardians ad litem for Ryan and Andrew, and counsel for the foster mother to Ryan submitted statements, pursuant to Practice Book § 79-6 (c), adopting the commissioner's brief on appeal.

[5] The respondent had "a long history of substance abuse, specifically with heroin, and ha[d] been on methadone maintenance intermittently since 2012." *In re Madison C.*, supra, 201 Conn. App. 187. Her treatment "oscillated, with periods of sobriety interrupted by intense relapses." (Internal quotation marks omitted.) Id. As a result of the respondent's substance abuse issues, she had many interactions with the criminal justice system. Id. In April, 2017, she was arrested and charged with risk of injury to a child in connection with the domestic dispute that led to the removal of Madison and Ryan from her care. Id. She ultimately was convicted of risk of injury to a child. Id., 188.

[6] The respondent was incarcerated at the time of the termination of parental rights trial as a result of her conviction for risk of injury to a child. See footnote 5 of this opinion.

[7] During the pendency of the trial, on August 14, 2019, the commissioner also filed a motion to review Andrew's permanency plan, with the goal of reuniting Andrew with Chester C. In addition, when the termination of parental rights petitions against Chester C. were withdrawn on August 16, the court ordered specific steps for Chester C. and canvassed him with respect to that order.

[8] The respondent also alleged that termination of her "parental rights was or may not have been necessary for the . . . commissioner to continue receiving federal funding pursuant to the Adoption and Safe Families Act of 1997, Pub. L. No. 105-89, 111 Stat. 2115." In its memorandum of decision, the court, *C. Taylor, J*, concluded that this basis for a new trial was legally insufficient because the respondent had not alleged any newly discovered evidence in her petition as to this issue. The respondent does not challenge that ruling on appeal.

[9] The court approved new permanency plans for Madison and Ryan on January 2, 2020, and a new permanency plan for Andrew on January 23, 2020.

[10] The intervening foster parents of Andrew also filed a motion to strike the respondent's petition on the day of the hearing.

[11] On July 30, 2021, this court sua sponte ordered the parties to file memoranda of law giving reasons why the original appeal should not be dismissed on the ground that judgment had not been rendered on the stricken petition for a new trial. Thereafter, the respondent moved the trial court for judgment on the stricken complaint. On August 11, 2021, Judge Taylor granted that motion and rendered judgment on the stricken petition. The respondent subsequently withdrew her original appeal and filed the present appeal on August 30, 2021.

[12] The respondent's assertion that she is entitled to equitable relief from the judgment terminating her parental rights is predicated, in part, on her contention that her direct appeal from that judgment was a "*per se*" inadequate remedy. (Emphasis in original.) That contention lacks merit. In her direct appeal, the respondent claimed that she was deprived of her due process rights because termination of her parental rights was not the least restrictive means necessary to achieve a compelling state interest once the commissioner withdrew the termination petitions as to Chester C. *In re Madison C.*, supra, 201 Conn. App. 191. This court declined to review her constitutional claim because she failed to raise it at trial and had failed to create an adequate record for review under *Golding*. Id., 190, 194. It was not impossible for her to have created such a record, however. The respondent could have availed herself of appellate review of her constitutional claim by raising it in the termination trial or ensuring the record was adequate for review under *Golding*.